JOHN E. KEITH v. CHARLES H. DAY AND ACE TOWN & COUNTRY HARDWARE STORE, INC.

No. 8510SC548

(Filed 3 June 1986)

1. **Contracts § 7— agreement not to compete in hardware business—enforceability**

An agreement not to compete could be enforced by plaintiff against defendant where the agreement was in writing and signed by defendant, a retired, experienced businessman; the agreement was supported by valuable consideration on its face with plaintiff and his partner having agreed fully to disclose their knowledge of the hardware business to defendant in exchange for the covenant not to compete; the covenant was incidental to and in support of their agreement to enter into the hardware business together; and the agreement not to compete for two years in the greater Raleigh area was reasonable in time and territory.

2. **Contracts § 7— contract not to compete with business—assignability**

A covenant not to compete with a business is assignable.

3. **Contracts §§ 7, 29.2— breach of covenant not to compete—lost profits—damages not speculative**

In an action for breach of contract based on an alleged breach of a covenant not to compete, plaintiff could properly recover his lost profits as a result of the breach, and his calculation of those damages was not speculative.

**4. Quasi Contracts and Restitution § 1.1— express contract—no basis for quantum meruit claim**

The trial court erred in denying defendant's motion for directed verdict on plaintiff's quantum meruit claim where the subject matter or basis of plaintiff's quantum meruit claim was the services plaintiff performed for defendant in helping establish his hardware store, but there was an express contract between the parties, which plaintiff alleged defendant had breached, covering the same subject matter.

APPEAL by defendants from *Lee, Judge.* Judgment filed 15 October 1984 in Superior Court, WAKE County. Heard in the Court of Appeals 19 November 1985.

*Hunter, Wharton & Howell by John V. Hunter III for defendant appellants.*

*Kimzey, Smith, McMillan & Roten by James M. Kimzey for plaintiff appellee.*

COZORT, Judge.

This case has been before us once before: *Keith v. Day,* 60 N.C. App. 559, 299 S.E. 2d 296 (1983).

Defendant Day appeals from a jury verdict awarding plaintiff $85,782 in damages for Day's breach of a covenant not to compete in the hardware business. Both defendants appeal from plaintiff's recovery of $252,120 on the theory of *quantum meruit* for plaintiff having assisted Day in establishing the corporate defendant. We affirm on the covenant not to compete issue, reverse on the *quantum meruit* issue, and remand for entry of judgment consistent with this opinion.

Plaintiff John E. Keith and his business partner, Howard Jung, are officers and principal shareholders in Ace Hardware and Home Center, Inc., which operates two Ace hardware stores in the Raleigh area. In late 1978 defendant Charles H. Day, a retired executive of Miller Brewing Company and a resident of Wisconsin, approached Keith and Jung about the possibility of opening a third Ace hardware store in the Raleigh area. Day had the capital to invest in such a venture but no experience in the hardware business. Keith and Jung had insufficient capital at that time to establish a third store but had the knowledge, experience, and know-how to establish the new store.

On advice of their attorney, Keith and Jung would not dis-cuss preincorporation matters until a letter agreement had been drafted and signed by Keith, Jung, and Day. That document, dated 7 December 1978, was signed by Keith, Jung, and Day, and by its terms, is a "mutual statement of intent and agreement to obtain and operate an Ace Hardware franchise in the Raleigh, North Carolina area." The agreement further provided, in perti-nent part, the following:

> *Negotiation.* We intend to negotiate in good faith with a view to reaching final agreement on matters related to the successful operation of an Ace Hardware franchise. While we are confident that we can work out any obstacles which stand in the way of final agreements, in the event that we are un-able to do so, we agree to share the legal expenses attribut-able to the effort. Additionally, in that the experience and know-how of hardware merchandizing [*sic*] will be contributed to the business association primarily by Howard and John, which fundamental know-how will be fully disclosed to Charles, Charles agrees that, in the unlikely event that we cannot reach mutually satisfactory agreements, he will not attempt to own or operate, in any form, any type of retail hardware operation in the greater Raleigh area (using the telephone book as the greater Raleigh index) for at least two years from the point at which any negotiations discontinue, as will be evidenced by our mutual statements that they have discontinued.

After Day signed the agreement, Keith showed Day a site in north Raleigh which Keith considered a good location for the new store. That site was selected.

Prior to the 7 December 1978 agreement, Keith told Day that he expected to be compensated for his services as a consultant. Day wrote Keith and suggested that in lieu of a cash outlay by Keith that his consulting services be used in a joint effort to make the operation a success for both of them.

During 1979, while Day was still residing in Wisconsin, Keith performed services related to obtaining the land and initial con-struction of the site. Day wanted to buy the land and build the building which he would then lease to the corporation which would be formed to operate the store. Keith did not want to be

financially involved in the real estate or in the ownership of the building to be constructed. Keith assisted in the real estate and construction projects because he wanted to be an owner and shareholder in the store. Keith told Day that gaining a percentage share in the new business was the compensation he wanted, and Day agreed that was to be Keith's compensation.

At trial, Keith testified that, in expectation of becoming an owner and shareholder, he continued to work on Day's behalf while Day was in Wisconsin. Keith's efforts included meeting with developers, bankers, engineers, the contractor, city government officials, property owners, salesmen, and Ace Hardware officials. Keith testified that he worked 35 to 50 hours per week for almost all of 1979 on the new hardware store project, in addition to working full time as president and chief operating officer of his own hardware company.

Negotiations for determining the shares of stock to be owned by Keith, Jung, and Day had begun in late 1978 and continued through 1979 and 1980. The parties tentatively agreed that Day was to own 50% of the stock with Keith and Jung owning 25% each. Day was to loan Keith and Jung the funds to purchase their shares. While no definite agreement had been worked out, Day assured Keith and Jung that the matter would be resolved when he moved to North Carolina.

In early 1980, Day moved to Raleigh. He set up his office directly in one of Keith's and Jung's stores in free office space. Day and employees for the new store were provided with access to books and accounts of Keith's business and were trained in the procedures which Keith and Jung used to run the hardware stores.

In early 1980 Ace Town & Country Hardware Store (hereinafter "Ace Town & Country Hardware") was incorporated with Day as 100% shareholder. Keith was made a director of the corporation and remained so until he resigned from the corporation on 6 February 1981. Jung was made a director of the corporation, but after a disagreement with Day, he resigned from the corporation on 18 July 1980.

On 8 October 1980 Day and Keith signed a letter which provided that Keith would acquire 50% ownership in Ace Town &

Country Hardware. In substance the 8 October 1980 agreement provided that Day was to sell one thousand shares of Ace Town & Country Hardware stock to Keith at $15.00 per share. The transfer of the shares was to take place between 8 October 1980 and 15 January 1981 at Day's option. Day was to loan $45,000 to Keith to purchase the shares and in return Keith was to loan $30,000 to the new corporation. The agreement set forth the terms of Day's loan to Keith and Keith's loan to Ace Town & Country Hardware, and provided that the corporate by-laws would be changed to give Day and Keith equal votes on the Board. No stock was ever transferred, however, from Day to Keith.

On 9 August 1981 Day informed Keith and Jung in writing that he was merging Ace Town & Country Hardware with Falls American Hardware. Joe Johnson, owner of Falls American Hardware, became co-owner and general manager of the merged corporation with Day as president and principal stockholder.

Keith obtained an assignment of Jung's rights on the 7 December 1978 agreement not to compete and filed suit against Day and Ace Town & Country Hardware on 30 October 1981. In the first count of the two count amended complaint Keith alleged that defendants breached the 7 December 1978 agreement not to compete and that defendants breached the 8 October 1980 agreement to sell him 50% of the Ace Town & Country Hardware stock by Day refusing to loan plaintiff the money to purchase the stock, causing plaintiff $500,000 in damages. In the second count, plaintiff alleged that

> [i]n the alternative to the breach of contract damage to which the Plaintiff is entitled, the Plaintiff is entitled to be compensated for his services rendered on the basis of *quantum meruit* to the Defendants as well as the unjust enrichment to the Defendants for the services rendered to the Defendants in training and importing knowledge and know-how of the hardware business to the Defendants.

Defendants answered denying any liability to the plaintiff though defendants admitted the validity of the 8 October 1980 agreement. Defendant Day counterclaimed alleging that it was plaintiff who had breached the 8 October 1980 agreement by failing to perform his obligations under the agreement. Defendant Day also counterclaimed for compensation on a *quantum meruit* basis for

helping plaintiff run his business successfully and for imparting business knowledge to the plaintiff.

This matter came on for trial before a jury on 17 September 1984.

At trial plaintiff's and defendants' versions of the facts concerning the 8 October 1980 agreement differed. Plaintiff presented evidence which tended to show the following:

T. Michael McLarry, an attorney, drafted a note in accordance with the 8 October 1980 agreement after clarification of certain issues through several meetings with Day. Though Day continued to promise Keith that he would sell him the stock with the stock itself as the only security for the note and though the 8 October 1980 agreement specified that the stock was to be delivered by 15 January 1981, Day transferred no stock when a promissory note signed by Keith was presented to him on 15 January 1981. Day told Keith that he had wadded up the note and thrown it in the fireplace. Other notes were drafted but were never signed by Keith because Day told McLarry it was useless to deliver the notes to Day. Day introduced new demands on 18 January 1981. He refused to sell the stock even on his own terms, even after Keith had obtained a release of rights on the covenant not to compete from Jung to allay Day's fears of being sued by Jung. Keith told Jung he planned to purchase 50% of the stock in Day's store and then resell it to the company owned by Keith and Jung.

Keith testified that Day would not sell half the shares because he wanted to sell 100% of the business. Keith and Jung discussed buying the entire 100% of the stock from Day but were unable to meet his price. Since Day was attempting to sell 100% of the business at that time, Keith gave him a letter claiming 50% interest in the hardware store.

Defendants' evidence surrounding the 8 October 1980 agreement showed the following:

Day never intended to be the sole owner of the hardware store. Attorney McLarry never drafted any documents in accordance with the 8 October 1980 agreement. Keith never told Day that he was willing to borrow funds to purchase the stock pursuant to the 8 October 1980 agreement and never presented Day

with a signed note in accordance with the agreement. McLarry did draft a note for Keith's signature but the note contained many terms contradictory to the 8 October 1980 agreement, one of which was that Keith's liability to repay the note was conditioned upon his being able to do so from profits to be made by the hardware store. Day made it clear to Keith, in writing, that he was not willing to provide Keith with such no-risk financing to purchase stock in the new company.

By January of 1981 Day felt that dealings had reached an end between Keith and him because of Keith's unwillingness to borrow the money pursuant to the 8 October 1980 agreement. Day wrote Keith a letter stating, in part, the following:

> I am ready, willing and able to transfer these [1,000] shares as per the terms of [the 8 October 1980 agreement] and did instruct Mike McLarry to prepare the notes that would be involved. You have told me, however, you could not sign such a note to me unless it specifically stated that the principal repayment would be contingent upon Ace Town & Country paying the principal on its proposed note to you. Although I fully realize it was, and still would be, hoped this is the way things would work out, there is no way, John, I can make this one of the terms of the note. Such a contingency would destroy any 50-50 relationship leaving me responsible for all of the stockholder debt and only allowing me 50% of any gains.
>
> Currently Ace Town & Country is in a serious financial bind because our planned additional bank loan has not been processed and it will not be processed until we resolve some means of transfering [sic] these shares.
>
> If we don't find a satisfactory way out of problem within the next few days, I will be forced to find some other means of financing the business.

Day offered to sell Keith and Jung all of the business, but they were unable to buy it. In October 1981 Day merged Town & Country Hardware with Falls American Hardware, having informed Keith in August 1981 of the upcoming merger.

At trial the following issues were submitted to and answered by the jury:

1. Did the defendant Day breach the contract of December 7, 1978, by entering the hardware business in the greater Raleigh area?

ANSWER: Yes

2. If so, what amount, if any, is the plaintiff Keith entitled to recover for the breach of that contract?

ANSWER: $85,782

3. Did the defendant Day breach the October 8, 1980, agreement by refusing to sell the stock to the plaintiff in accordance with the agreement?

ANSWER: No

4. If so, what amount, if any is the plaintiff Keith entitled to recover for the breach of the contract?

ANSWER: _____

5. Is the plaintiff Keith entitled to recover from the defendants on the basis of *quantum meruit*?

ANSWER: Yes

6. If so, what amount, if any, is the plaintiff entitled to recover for *quantum meruit*?

ANSWER: $252,120

7. Did the plaintiff breach the contract of October 8, 1980, by refusing to purchase the stock in accordance with the agreement?

ANSWER: No

8. If so, what amount, if any, is the defendant Day entitled to recover for the breach of that contract.

ANSWER: _____

The trial court instructed the jury to answer issue number five (*quantum meruit* issue) regardless of their answer to issue number three (concerning defendant Day's alleged breach of the 8 October 1980 agreement).

On 15 October 1984 the trial court entered judgment for the plaintiff on the verdict and against defendant Day in the amount

of $85,782, with interest, on the covenant not-to-compete claim and against both defendants in the amount of $252,120, with interest, on the *quantum meruit* claim. Defendants appealed.

While defendants have set forth thirty-eight assignments of error with some seven hundred and seventeen exceptions in the record on appeal, they argue in their brief only seventeen assignments of error.

[1] First, we address defendant Day's contention that the trial court erred in not dismissing plaintiff's claim for damages for wrongful competition based on the 7 December 1978 covenant not to compete.

Defendant Day contends that plaintiff had no enforceable agreement not to compete, and even if plaintiff had an enforceable agreement, plaintiff's evidence was insufficient to go to the jury on that claim. We disagree.

The reasonableness of a restrictive covenant is a question of law for the court to decide. The reasonableness of the restrictive covenant depends upon the circumstances of each case. *Jewel Box Stores Corp. v. Morrow*, 272 N.C. 659, 158 S.E. 2d 840 (1968). A covenant which prohibits a person from engaging in a similar business will be upheld if:

1. It is founded on valuable consideration;

2. It is necessary to protect the legitimate interest of the one who is to benefit from the covenant;

3. It is reasonable in respect to time and territory; and

4. It does not interfere with the public interest.

*Bicycle Transit Authority, Inc. v. Bell*, 314 N.C. 219, 333 S.E. 2d 299 (1985); *Jewel Box Stores Corp. v. Morrow, supra; Beam v. Rutledge*, 217 N.C. 670, 9 S.E. 2d 476 (1940); *Seaboard Industries, Inc. v. Blair*, 10 N.C. App. 323, 178 S.E. 2d 781 (1971). Additionally, the covenant not to compete must be in writing and signed by the one who agrees not to compete. G.S. 75-4.

We recognize the distinction between covenants not to compete in connection with the sale of a business and covenants not to compete in connection with a contract of employment. The latter are more closely scrutinized than the former. *See Seaboard*

*Industries, Inc. v. Blair, supra; Jewel Box Stores Corp. v. Morrow, supra.* The restrictive covenant in this case, however, does not fit neatly into either category. Rather, the restrictive covenant in this case is more closely akin to the type found in *Beam v. Rutledge, supra,* where there was a stipulation in a partnership agreement between two doctors that upon dissolution of the partnership the junior partner would not practice the profession in the same town or within one hundred miles thereof for five years. There the court noted that "a professional man who is the product of . . . [a] college education is supposed to have in his training an asset which should enable him adequately to guard his own interest, especially when dealing with an associate on equal terms." 217 N.C. at 674, 9 S.E. 2d at 478. It is in that light we judge the reasonableness of the restrictive covenant between the professional businessmen in this case.

We find the restrictive covenant to be reasonable as a matter of law. The 7 December 1978 agreement was in writing and signed by Day, a retired, experienced businessman. The covenant not to compete was supported by valuable consideration on the face of the agreement, with Keith and Jung having agreed to fully disclose their knowledge of the hardware business to Day in exchange for the covenant not to compete. Additionally, the covenant was incidental to and in support of their agreement to enter into the hardware business together. The courts ordinarily will not inquire into the adequacy of the consideration, unless the contract is a fraud upon the restrained party, for it is up to the parties themselves to determine the adequacy of the consideration to the restraint imposed. It is sufficient that the covenant not to compete shows on its face a legal and valuable consideration. *Jewel Box Stores Corp. v. Morrow, supra,* at 666, 158 S.E. 2d at 845. The covenant was necessary to protect the legitimate interests of Keith and Jung who did not want to fully disclose their knowledge of the hardware business and the particular inner workings and business practices of their two Ace hardware franchises to someone who, with this newly acquired knowledge, could go out and open an Ace hardware store franchise without them, in competition with them. The agreement was certainly reasonable in both time and territory. Its restriction upon Day not to own or operate a retail hardware store for two years in the greater Raleigh area, if and when negotiations discontinued, was rea-

sonable and necessary to protect plaintiff's interest. Further, it fits well within the scope of agreements previously upheld by our courts. *See Harwell Enterprises v. Heim*, 276 N.C. 475, 173 S.E. 2d 316 (1970); and *Jewel Box Stores Corp. v. Morrow, supra*. Nor can we say that the covenant not to compete in this case interferes with the public interest.

We hold the covenant not to compete is reasonable as a matter of law, and we reject defendant Day's contention that plaintiff presented insufficient evidence to go to the jury on that claim. Plaintiff produced a valid written and signed covenant not to compete and presented evidence from which a jury could find a breach of that agreement by defendant Day. As such the trial court did not err in refusing to dismiss plaintiff's claim for breach of the covenant not to compete.

[2] Next, we consider and reject defendant Day's assignment of error that Jung's interest in the covenant not to compete is not assignable to plaintiff Keith. A covenant not to compete with a business is assignable. *Anders v. Gardner*, 151 N.C. 604, 66 S.E. 665 (1910).

[3] We next consider defendant Day's argument that the trial court erred in admitting inadmissible and speculative evidence of the plaintiff's alleged damages for breach of the covenant not to compete.

While defendant sets forth some forty-six exceptions in support of this assignment of error, he does not specifically refer to a particular piece of evidence which he views as speculative and therefore inadmissible. Rather, he argues that "[i]t appears that Plaintiff, violating the general principle of law on the subject, used the gain to the Defendant corporation rather than the loss to the Plaintiff as the measure of damages." We do not find that plaintiff sought to recover the profits defendant Day obtained as a result of the breach, and we intimate no opinion as to whether the gain to the defendant is a proper measure of damages for the breach of a covenant not to compete. As we read the record, plaintiff sought to recover his lost profits as a result of the breach, and his calculation of those damages was not speculative.

Lost profits are recoverable in a breach of contract action

"when it is made to appear (1) that it is reasonably certain that such profits would have been realized except for the breach of the contract, (2) that such profits can be ascertained and measured with reasonable certainty, and (3) that such profits may be reasonably supposed to have been within the contemplation of the parties, when the contract was made, as the probable result of the breach." *Perkins v. Langdon*, 237 N.C. 159, 171, 74 S.E. 2d 634, 644 (1953).

*Gouger & Veno, Inc. v. Diamondhead Corp.*, 29 N.C. App. 366, 368, 224 S.E. 2d 278, 279-80 (1976). We also recognize that

breach of non-competition agreements of the type with which we are here concerned necessarily involves damages which are difficult to calculate with absolute precision. [Citation omitted.] The indefiniteness consequent upon this difficulty does not, however, by itself preclude relief. . . .

* * * *

"What the law does require in cases of this character is that the evidence shall with a fair degree of probability establish a basis for the assessment of damages."

. . . [To require otherwise] would encourage the violation of contracts with impunity, the breaching party resting secure in the knowledge that the injured party would be unable to prove damages with the nice precision which appellant would require.

*Aiken Industries, Inc. v. Estate of Wilson*, 477 Pa. 34, 41-42, 383 A. 2d 808, 812, *cert. denied*, 439 U.S. 877, 58 L.Ed. 2d 191, 99 S.Ct. 216 (1978), *quoting Massachusetts Bonding & Ins. Co. v. Johnstone & Harden, Inc.*, 343 Pa. 270, 278-80, 22 A. 2d 709, 714 (1941).

Defendant Day does not argue that lost profits were not within the contemplation of the parties. Rather, he argues that plaintiff's evidence of damages was too speculative. We find, however, that plaintiff's evidence establishes with reasonable certainty (1) that such lost profits would have been realized except for the breach, and (2) their amount. Plaintiff presented evidence of a three-mile primary and five-mile secondary competition area between defendant Day's store and plaintiff's Raleigh store. There was evidence that Ace Hardware Corporation would not let

any of its franchises locate within close proximity of each other. Plaintiff estimated that 10% of the sales of defendant Day's store would reasonably have been the sales for his store if defendant Day's store had not been in competition with plaintiff's Raleigh store. This percentage was based on the percentage of Day's sales which could reasonably be ascribed to the primary overlap area where defendant Day's store and plaintiff's store were in competition. Then plaintiff multiplied the ten percent of the sales by his own profit margin, not Day's. This assignment of error is overruled.

Defendant Day argues that the "trial court erred in admitting evidence of alleged wrongful competition more than two years after dealings between the plaintiff and the defendant came to an end, which was irrelevant and prejudicial." While in support of this assignment of error defendant Day also lists forty-six exceptions in his brief, he points to no specific piece of evidence which he contends was erroneously admitted. We have reviewed the exceptions noted and find no prejudicial error in the admission of evidence as it relates to damages for breach of the covenant not to compete. The covenant not to compete provided that defendant Day would not compete with plaintiff in the hardware business for two years from the date negotiations discontinued. With respect to damages, the trial court correctly instructed the jury that if it found plaintiff had sustained lost profits, then he would be entitled to recover those profits which were lost within a two-year period after they found the negotiations were finally discontinued, which was no earlier than January 1981 and no later than 9 August 1981. This instruction cured any error which may have occurred by the admission of evidence of lost profits more than two years after negotiations discontinued. This assignment of error is overruled.

[4] We next consider defendant Day's assignment of error that the trial court erred in denying defendant Day's motion for directed verdict on plaintiff's *quantum meruit* claim on the ground that there was an express contract on the same subject matter. We agree that the trial court erred on this issue.

The subject matter or basis of plaintiff's *quantum meruit* claim was the services plaintiff performed for defendant Day in helping establish Ace Town & Country Hardware. That is, plain-

tiff sought compensation for these services based upon an *implied* contract. The *express* contract of 8 October 1980, which plaintiff alleged defendant Day had breached, covered this same subject matter. At trial the evidence established that plaintiff agreed to perform these services in return for the right to become a shareholder in Ace Town & Country Hardware. The method by which plaintiff was to become a shareholder was set out in the 8 October 1980 agreement. Defendant Day did not deny the existence of the 8 October 1980 express contract. Rather, he admitted its validity but denied breaching it. Despite the fact that the validity of the express contract was admitted, the jury was allowed to decide whether the plaintiff was entitled to recover in *quantum meruit*, in addition to deciding whether defendant Day breached the 8 October 1980 agreement. This was error. As stated in *Vetco Concrete Co. v. Troy Lumber Co.*, 256 N.C. 709, 713-14, 124 S.E. 2d 905, 908 (1962):

> It is a well established principle that an express contract precludes an implied contract with reference to the same matter. *Supply Co. v. Clark*, 247 N.C. 762, 102 S.E. 2d 257; *Jenkins v. Duckworth & Shelton, Inc.*, 242 N.C. 758, 89 S.E. 2d 471; *Crowell v. Air Lines*, 240 N.C. 20, 81 S.E. 2d 178; *McLean v. Keith*, 236 N.C. 59, 72 S.E. 2d 44; *Manufacturing Co. v. Andrews*, 165 N.C. 285, 81 S.E. 418, Ann. Cas. 1916A 763; *Lawrence v. Hester*, 93 N.C. 79; *Klebe v. United States*, 263 U.S. 188, 68 L.Ed. 244; 12 Am. Jur., Contracts, Section 7, page 505; 17 C.J.S., Contracts, Section 5, page 321, *et seq.*

> It is stated in 12 Am. Jur., Contracts, Section 7, page 505: "There cannot be an express and an implied contract for the same thing existing at the same time. It is only when parties do not expressly agree that the law interposes and raises a promise. No agreement can be implied where there is an express one existing," citing, among other cases, *Manufacturing Co. v. Andrews, supra*, and *McLean v. Keith, supra*. It is further stated in a footnote that, "Perhaps it is more precise to state that where the parties have made a contract for themselves, covering the whole subject matter, no promise is implied by law.

The valid express contract precluded recovery in *quantum meruit* based on the same subject matter. It was error for the trial court not to dismiss plaintiff's *quantum meruit* claim.

Plaintiff argues, however, that it was not error to submit the issue of *quantum meruit* to the jury for he reasons "[s]ince it found that neither party breached that 'contract,' the jury might very well have concluded, on the testimony given, that there was no enforceable contract." Plaintiff also argues that there was "evidence presented from which it might be reasonably concluded that the express contract was abandoned . . . ." *See Campbell v. Blount*, 24 N.C. App. 368, 210 S.E. 2d 513 (1975). The jury, however, was not asked to decide whether the 8 October 1980 contract was valid or had been abandoned. The issue submitted to the jury assumed the validity of the contract and asked the jury to decide whether defendant Day had breached the 8 October 1980 contract, which the jury found he had not. Plaintiff has taken no exception to this finding nor has he appealed. We are bound by the jury's finding on this issue.

Additionally, plaintiff argues that the express contract and the *quantum meruit* claim are not on the same subject matter. Plaintiff's pleadings and the evidence make this argument untenable. In count one of his complaint plaintiff pled breach of the 8 October 1980 contract, and in count two plaintiff reincorporated by reference the essential allegation of count one and then alleged he was entitled to be compensated for his services on the basis of *quantum meruit, "[i]n the alternative* to the breach of the contract damages to which the Plaintiff is entitled . . . ." (Emphasis added.] Plaintiff was entitled to plead, in the alternative, for recovery in *quantum meruit. See Environmental Landscape Design Specialist v. Shields*, 75 N.C. App. 304, 330 S.E. 2d 627 (1985). There is no need to plead *quantum meruit* in the alternative, however, when the *quantum meruit* claim is not based on the same subject matter as the express contract claim. Plaintiff's evidence at trial showed that all the work he did for Day's benefit was in expectation of becoming a shareholder. It was error for the trial court to fail to dismiss plaintiff's *quantum meruit* claim when the parties had agreed in the pleadings and the evidence showed that an express contract existed on the same subject matter.

Ace Town & Country Hardware contends the trial court also erred in failing to dismiss the corporate defendant from the case. We agree. While the corporation may have benefited from plaintiff's services, it was not obligated to pay for them since these services were performed pursuant to an express contract with defendant Day only. *See Vetco Concrete Co. v. Troy Lumber Co., supra.*

Having responded to those assignments of error which resolve the case, we find it unnecessary to discuss the remaining assignments of error brought forward by defendants.

In summary, we affirm the award of damages for breach of the 7 December 1978 covenant not to compete; we reverse that part of the judgment awarding damages in *quantum meruit* against defendants Day and Ace Town & Country Hardware; we remand to the trial court for entry of judgment consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

Judges WEBB and BECTON concur.