Better Bus. Forms & Prods., Inc. v. Craver, 2007 NCBC 34

| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| GUILFORD COUNTY | 07 CVS 3030 |

| | | |
|---|---|---|
| BETTER BUSINESS FORMS & PRODUCTS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER ON DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6) |
| JEFFREY CRAVER and PROFESSIONAL SYSTEMS USA, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

{1}     This case arises out of Plaintiff's suit for breach of the Trade Secrets Protection Act, breach of a restrictive covenant, tortious interference with contract, conversion, punitive damages, unfair/deceptive trade practices and injunctive relief.  This matter comes before the Court on Defendants' Motion to Dismiss Under Rule 12(b)(6).

{2}     After considering the briefs and oral arguments, the Court GRANTS the Defendants' Motion to Dismiss.

> *Beavers & Boydoh, LLP by Robert E. Boydoh, Jr. for Plaintiff Better Business Forms & Products, Inc.*
>
> *Wishart Norris Henninger & Pittman, P.A. by Pamela S. Duffy for Defendant Professional Systems USA, Inc.; Patterson, Dilthey, Clay & Bryson, L.L.P. by Thomas M. Buckley and S. Scott Farwell for Defendants Professional Systems USA, Inc. and Jeffrey Craver.*

Tennille, Judge.

# I.

## PROCEDURAL BACKGROUND

{3} This action was filed in Guilford County Superior Court on January 23, 2007. The matter was designated a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina dated February 27, 2007, and subsequently assigned to the undersigned Special Superior Court Judge for Complex Business Cases by order of the Chief Special Superior Court Judge for Complex Business Cases dated March 2, 2007.

{4} Defendants filed a Motion to Dismiss Under Rule 12(b)(6) and supporting memorandum on March 26, 2007. Plaintiff filed a Memorandum in Response to Defendants' Motion to Dismiss on April 16, 2007. Defendants filed a Reply Brief to Plaintiff's Memorandum Responding to Defendants' Motion to Dismiss on April 26, 2007. The Court heard oral arguments on the motion on May 24, 2007.

# II.

## FACTUAL BACKGROUND

### A.

### THE PARTIES

{5} Plaintiff Better Business Forms & Products, Inc. ("Plaintiff") is a North Carolina corporation with its principal place of business located in Guilford County, North Carolina.

{6} Plaintiff is engaged in the business of distributing forms, office supplies, and related products in the State of North Carolina and throughout the United States.

{7} Defendant Jeffrey Craver is a citizen and resident of Forsyth County, North Carolina.

{8} Defendant Professional Systems USA, Inc. is a North Carolina corporation with its registered office in Alamance County, North Carolina.

B.

THE ALLEGATIONS OF THE COMPLAINT

{9} The parties to this action are engaged in the business of distributing business forms, office supplies, and related products throughout North Carolina and several other states.

{10} Better Business Forms, Inc. ("BBF") is a North Carolina corporation with its registered office in Guilford County, North Carolina., Prior to July 1, 2002, BBF was engaged in distributing business forms, office supplies, and related products throughout North Carolina and several other states. (Compl. ¶ 5.)

{11} BBF may or may not be connected with Plaintiff through the same ownership, but this connection does not matter in relation to the restrictive covenant discussed in this case. BBF and Plaintiff are separate companies.

{12} On January 1, 1997, BBF employed Defendant Craver as a sales representative by written Employment Agreement. (Compl. ¶ 6 Ex. A.) The non-competition covenant contained in the Employment Agreement reads as follows:

> Upon termination of the Employee's employment, the Employee shall not directly or indirectly enter into or engage in the business forms or supplies business with any customers doing business with the Employer at the time of such termination for a period of one year after the termination. . . .
>
> FURTHERMORE, during the term of his employment, and for one year thereafter, the Employee shall not reveal outside sources without the written consent of the Employer, and matters, the revealings of which could, in any matter adversely affect the Employer's business unless required by law to do so.

(Compl. Ex. A ¶5.)

{13} B-N-B Systems Inc., d/b/a Global DocuGraphix USA, Inc. ("GDX") is an Arkansas corporation with a registered office in Wake County, North

Carolina, and a branch in Greensboro, North Carolina. Prior to August 2, 2006, GDX was engaged in distributing business forms, office supplies and related products throughout North Carolina and several other states. (Compl. ¶ 7.)

{14}   On July 1, 2002, GDX acquired substantially all of BBF's assets in an asset purchase transaction.  As a part of the transaction BBF assigned its contract rights between BBF and its employees to GDX. (Compl. ¶ 8.)  The Schedules attached to the Bill of Sales state that the "[a]ssumed liabilities means . . . (a) All of Seller's right, title and interest in and to and obligations under all employment agreements with Seller's employees." (Compl. Ex. B. Sch. 2.1(a)(a).)  Additionally, the Schedules state that the "[a]ssumed Contracts and Agreements [include] . . . (c) All non-competition agreements between Seller and its employees." (Compl. Ex. B. Sch. 2.1(b)(c).)

{15}    On or about July 1, 2002, Defendant Craver's employment with BBF was terminated.  Compl. ¶ 8; Mot. Dismiss ¶ 4.)  Craver did not sign a new employment agreement with GDX.  (Br. Supp. Mot. Dismiss 2.)  Defendant Craver did, however, accept employment with GDX and continued to sell business forms as a sales representative of GDX. (Compl. ¶ 8.)

{16}   On July 18, 2006, GDX filed a voluntary bankruptcy petition. (Compl. ¶ 9.)  Pursuant to the Notice of Public Auction and Sales Procedure Order entered in the Bankruptcy Court on July 21, 2006, Plaintiff was the highest bidder at the public auction of GDX's assets with respect to the Greensboro Branch. (Compl. ¶ 10.)

{17}   On August 2, 2006, the purchase of GDX's assets was approved by court order.  (Compl. ¶ 11.)  Plaintiff purchased all assets related to the Greensboro Branch. (Compl. ¶ 12.)  The Bill of Sale included "[a]ll contract rights including but not limited to, all non-compete and confidentiality agreements."  (Compl. Ex. D. (a)(3)(ii).)

{18}   On or about August 2, 2006, Defendant Professional Systems hired Defendant Craver as a sales representative to sell business forms and office

supplies, allegedly in his former sales territory, to former GDX customers in direct competition with Plaintiff. (Compl. ¶ 13.)

{19} Defendant Craver allegedly interfered with GDX customer accounts purchased by Plaintiff and with Plaintiff's ability to sell its products to those customers. Defendant Craver also allegedly actively solicited and sold business forms, office supplies and related products to several businesses and customer accounts purchased by Plaintiff. (Compl. ¶¶ 14, 15.) For purposes of this motion to dismiss, those allegations are accepted as true.

{20} Based on the above allegations, Plaintiff asserts the following claims for relief:

> (1.) violation of the Trade Secrets Protection Acts;
>
> (2.) breach of non-competition covenant;
>
> (3.) tortious interference with contract;
>
> (4.) conversion;
>
> (5.) punitive damages;
>
> (6.) unfair/deceptive trade practices;
>
> (7.) injunctive relief.

## III.

## MOTION TO DISMISS

{21} Defendants have moved to dismiss this action for failure to state claims upon which relief can be granted under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. (Defs.' Mot. Dismiss.)

## A.

## LEGAL STANDARD

{22} The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the pleading against which the motion is directed. *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). In *Branch Banking & Trust Co. v. Lighthouse Fin. Corp.*, 2005 NCBC 3 (N.C. Super. Ct. July 13,

2005), http://www.ncbusinesscourt.net/opinions/2005%20NCBC%203.htm, this Court summarized the 12(b)(6) standard as follows:

> When ruling on a motion to dismiss under Rule 12(b)(6), the court must determine "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted."  In ruling on a motion to dismiss, the court must treat the allegations in the complaint as true.  The court must construe the complaint liberally and must not dismiss the complaint unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.  When considering a motion under Rule 12(b)(6), the court is not required to accept as true any conclusions of law or unwarranted deductions of fact in the complaint.  When the complaint fails to allege the substantive elements of some legally cognizable claim, or where it alleges facts which defeat any claim, the complaint should be dismissed under Rule 12(b)(6).

*Id.* ¶ 8 (citations omitted).

{23}    Furthermore, the Court may not consider "extraneous matter" outside the complaint, or else the Rule 12(b)(6) motion will be converted into a Rule 56 motion for summary judgment. *See, e.g.*, *Fowler v. Williamson*, 39 N.C. App. 715, 717, 251 S.E.2d 889, 890–91 (1979).  However, the Court may consider documents the moving party attaches to a 12(b)(6) motion which are the subject of the challenged pleading and specifically referred to in that pleading. *See Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001).  "[T]he [C]ourt is not required to accept as true any conclusions of law or unwarranted deductions of fact." *Id.* at 56, 554 S.E.2d at 844.  Thus, the Court can reject allegations that are contradicted by the supplementary documents presented to it. *See E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (stating that the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments").

B.

ANALYSIS

{24} Plaintiff asserts that the original Employment Agreement between Defendant Craver and BBF, and the restrictive covenants therein, survived assignment to GDX in 2002, and that the restrictive covenant was valid and remained applicable to Defendant Craver through August 2006 when Plaintiff purchased GDX's assets in the foreclosure sale following GDX's bankruptcy proceedings.

{25} Defendants assert that the restrictive covenant was no longer enforceable when Plaintiff purchased GDX's assets. Defendants assert that rights regarding the restrictive covenant, which GDX acquired from BBF in the asset purchase transaction, expired one year after Defendant Craver's employment with GDX began and more than three years before Plaintiff purchased GDX's assets.

1.

RESTRICTIVE COVENANT

{26} Today, a restrictive covenant between an employer and employee will be held valid and enforceable in North Carolina if it is (1) in writing; (2) made part of a contract of employment; (3) based on valuable consideration; (4) reasonable both as to time and territory and (5) not against public policy. *United Lab Inc., v. Kuykendall*, 322 N.C. 643, 649-50, 370 S.E.2d 375, 380 (1988) (citations omitted). A restrictive covenant which satisfies these requirements is reasonable and will be enforced by the courts. The burden of proving reasonableness falls upon the party who seeks to enforce the covenant. *See, e.g., Mark v. Hartman,* 117 N.C. App. 307, 311, 450 S.E.2d 912, 916 (1994); *Harwell Ent. v. Heim,* 6 N.C. App. 548, 552, 170 S.E.2d 540, 543 (1969); *Kadis v. Britt,* 224 N.C. 154, 158, 29 S.E.2d 543, 545 (1944). "The reasonableness of a non competition covenant is a matter of law for the court to decide." *Beasley v. Banks,* 90 N.C. App. 458, 460, 368 S.E.2d 885, 886

(1988) (citations omitted). Additionally, the courts have carefully scrutinized covenants to protect employees. For example, the restriction on time and territory must be reasonably limited. *Hartman v. W.H. Odell & Assocs., Inc.*, 117 N.C. App. 307, 312, 450 S.E.2d 912, 917 (1994).

{27} For purposes of this ruling, the Court finds that the original restrictive covenant initially fulfilled the five factors set out in the *United Laboratories* case. New issues of assignability and consideration arose when the restrictive covenant was transferred, first to GDX, and then to Plaintiff.

{28} The legal issue presented is whether or not the restrictive covenant was assignable to and enforceable by Plaintiff. That issue is ultimately a question of public policy which has not been previously addressed by the North Carolina appellate courts. A related issue is whether or not Plaintiff was required to provide valuable consideration for the restrictive covenant. For the reasons set forth below, the Court finds that the original restrictive covenant was not enforceable by Plaintiff.


A.

ASSIGNABILITY (PUBLIC POLICY)

{29} Defendants argue that the restrictive covenant was not assignable to Plaintiff, and thus not enforceable. There is no North Carolina case law on point; however, as a general matter "a covenant not to compete with a business is assignable." *Keith v. Day*, 81 N.C. App. 185, 195, 343 S.E.2d 562, 568 (1986) (citations omitted). In *Keith,* the covenant

> was entered into pursuant to the parties beginning a franchise hardware store. The Court observed that the covenant not to compete involved a matter that fell somewhere between the sale of business and a contract of employment, but it did so only to determine under what standard to judge the covenant's reasonability, not its assignability. Indeed after concluding that the covenant was reasonable, the Court of Appeals then rejected outright the defendant's claim that an interest in a covenant not to compete could not be assigned.

*Reynolds Co. v. Harry Tart*, 955 F. Supp. 547, 556 (1997) (*citing Keith*, 81 N.C. App. at 193-195, 343 S.E.2d at 567-568) (discussing the facts and holding of *Keith*). Additionally, "[c]ovenants not to compete facilitate and protect capital investment." *Reynolds*, 955 F. Supp. at 557. In *Reynolds* the plaintiff purchased substantial assets and good will from Jordan Graphics, Inc. The plaintiff was also assigned a number of contracts and agreements Jordan Graphics, Inc. had with third parties, including its employment agreements with defendants Wheeler and Tart. *Id.* at 551. The evidence in *Reynolds* indicated that the plaintiff was assigned the defendants' at-will employment contracts, and then exercised its option to terminate the employees. *Id.* at 556. The defendants argued that the restrictive covenants in question were part of a contract for personal services and therefore, the employment contracts were not assignable. *Id.* The court, however, decided that it did not matter if the employment contracts were in fact assigned or assignable, but that it was clear that the restrictive covenant was assignable. *Id.* at 557. The court stated that

> [l]imitations on an employer's liberty to delegate her duty to perform under an employment contract, involve different issues than assignment of covenants not to compete. For while the former two primarily involves the relationship between the employer and employee, the later [sic.] concerns an employer's investment in its employee and the possibility of that investment being pawned off to a rival competitor. Covenants not to compete facilitate and protect capital investment. It comes as no small surprise, then, that in conjunction with a sale of business, "a covenant not to compete with a business is assignable."

*Id.* (*quoting Keith*, 81 N.C. App. at 195, 343 S.E.2d at 568).

{30} In this case, however, as opposed to the *Reynolds* case, the restrictive covenant is not being assigned as part of the sale of business. The decisions made in *Keith* and *Reynolds* will reach as far as to the first sale to

GDX, which included "[a]ll non competition agreements" referred to in Schedule 2.1(b)(c) in the Bill of Sale. (*Supra* ¶ 14.) In this case, if Defendant Craver had not been hired by GDX or chose not to work for GDX, GDX could have enforced the covenant.

{31}   However, the rationale of the decisions in *Keith* and *Reynolds* should not be extended to the purchase of the Employment Agreement at the bankruptcy sale by Plaintiff.

{32}   In general, North Carolina courts have not looked favorably upon restrictive covenants. They have recognized that agreements in restraint of trade are generally prohibited. *Morehead Sea Food Co. v. Way*, 169 N.C. 679, 86 S.E. 603 (1915).  North Carolina courts have also on several occasions stated that restrictive covenants are against public policy. Some of these public policy cases come from the medical profession. An example is a case in which the court stated that a covenant not to compete between physicians was not contrary to public policy if it was "intended to protect a legitimate interest of the covenantee and is not so broad as to be oppressive to the covenantor or the public." *Iredell Digestive Disease Clinic, P.A. v. Petrozza*, 92 N.C. App. 21, 27, 373 S.E.2d 449, 453 (1988) (citations omitted).  The court also stated that "[i]f ordering the covenantor to honor his contractual obligation would create a substantial question of potential harm to the public health, then the public interests outweighs the contract interests of the covenantee, and the court will refuse to enforce the covenant." *Id.*

{33}   In the current case, the covenant might become a more restrictive covenant with, for example, a wider area and/or different market than initially agreed upon, because the employment agreement is transferred to a different employer—first to GDX then to Plaintiff —without being renegotiated.  This transfer might put the employee in the situation of being under a restrictive covenant he did not agree to, one that may impose restrictions he in fact never would have agreed to in his initial employment agreement.  To impose wider or different restrictions is unfair to the

employee. To protect the employee, the restrictive covenant should have been renegotiated. The argument that the covenant is assignable because it protects the employer's capital investment in its employee, *see, e.g., Reynolds*, 955 F. Supp. at 557, is not a valid argument after the first assignment, when the business itself did not undertake to renegotiate the covenant. To let the restrictive covenant be transferable and enforceable in the first place protects the initial employer's capital interest in its employee. Presumably, BBF was paid for its investment in the employee, and the new employer received the benefit of being able to enforce the covenant. When GDX hired Defendant Craver it should have renegotiated the restrictive covenant. The employee would have been able to negotiate the terms of employment, including the restrictive covenant, instead of just having the old covenant transferred to a new employer. The termination of employment and failure to renegotiate the terms of the new employment, including the restrictive covenant, triggered the one-year restrictive term and made the restrictive covenant unenforceable a year into Craver's employment with GDX. GDX would have had to enter into a new restrictive covenant with Defendant Craver if it wanted to extend the one-year restriction after Defendant Craver's employment with GDX began. There are no allegations in the pleadings that this was done. Thus, there was no valid restrictive covenant left which could be assigned to Plaintiff. Had GDX purchased BBF the entity instead of the entity's assets, GDX could have enforced the agreement.

{34} Both the policy underlying *Keith* and *Reynolds* and the practical implications of those decisions are rational, and neither work to the prejudice of employees nor provide employers with significantly greater benefits than the employers bargained for. To extend that policy to a situation where an employee is coerced into working for a company that has purchased his restrictive covenant out of a bankruptcy sale takes the policy beyond its reasonable bounds. Under Plaintiff's theory, there would be no limit to the

number or nature of the subsequent purchasers of the covenant. Employees would be left with no bargaining power in accepting new employment. Permitting repeated reassignments of restrictive covenants, especially where they are purchased in a bankruptcy auction, requires an employee to either accept employment with a new employer without any negotiation of the terms and conditions of employment or be forced to change jobs. In *Reynolds*, Mr. Tart was in a position that he bargained for initially. If his employment with Jordan Graphics Inc. terminated, he was restricted from competing for the period set out in the covenant. He could choose to work elsewhere or negotiate a new contract with Reynolds which may well have included a restrictive covenant. Reynolds had the opportunity to either negotiate a new contract which could have provided consideration for a new covenant or to hold the employee to his original bargain not to compete. That result gives both parties to the original contract the benefit of the bargain they contracted for while still allowing the employer the right to transfer an asset.

{35} When GDX went bankrupt and ceased doing business, it no longer needed to protect its competitive position. Craver never agreed not to compete with Plaintiff, and Plaintiff never provided any consideration to him for a covenant not to compete with it.

## B.
## WANT OF CONSIDERATION

{36} Another approach to the issue of whether or not the restrictive covenant was assignable to and enforceable by the Plaintiff is to determine if there was valid consideration for the restrictive covenant assigned first to GDX and then later to Plaintiff. This issue is important because a restrictive covenant, in order for to be enforceable, has to be supported by valid consideration. *United Lab*, 322 N.C. at 649-50, 370 S.E.2d at 380. In North Carolina, this assessment is based partially on when the covenant was entered into: as a part of the employee's initial employment, or after

employment existed. *Reynolds*, 955 F. Supp. at 553. If it was entered into at the same time the employee was hired for the job, then there is a mutual promise which provides valid consideration. *James C. Greene Co. v. Kelley*, 261 N.C. 166, 168, 134 S.E.2d 166, 167 (1964). Consequently, a "promise of new employment is valuable consideration and will support an otherwise valid covenant not to compete contained in the initial employment contract." *Reynolds*, 955 F. Supp. at 553 (*citing Young v. Mastrom, Inc.*, 99 N.C. App. 120, 123, 392 S.E.2d 446, 448, *disc. rev. denied*, 327 N.C. 488, 397 S.E.2d 239 (1990)). "A covenant entered into *after* an employment relationship already exists must be supported by new consideration, such as a raise in pay or a new job assignment." *Reynolds,* 955 F. Supp. at 553 (citations omitted).

{37}   In this case, the original restrictive covenant was supported by consideration. Defendant Craver signed the Employment Agreement with the restrictive covenant as part of his initial employment with BBF. (Compl. ¶ 6 Ex. A.) Thus, adequate consideration existed to support the covenant. *See Greene,* 261 N.C. at 168, 134 S.E.2d at 167. However, when the contract is assigned, as in this case, first to GDX, then to Plaintiff, the consideration issue must be reconsidered. The question is whether there was adequate consideration when Defendant Craver went to work for GDX. There was no new employment agreement and no new restrictive covenant at that time. Therefore, no new consideration flowed to Craver in return for a new restrictive covenant. While GDX could enforce the old agreement for one year but gave no new consideration for a new agreement. GDX could have easily protected itself by entering into a new employment agreement with a new restrictive covenant. Craver then would have had a choice of signing the new agreement or complying with his original restrictive covenant. In the second sale of bankruptcy assets, GDX, the bankrupt estate, had no new covenant supported by consideration to assign to Plaintiff. Plaintiff, therefore, had no enforceable restrictive covenant with Defendant Craver.

## IV.

## CONCLUSION

{38}   Simply stated, when an employer sells its assets, including its right to enforce a restrictive covenant in an employment contract, the period of the restrictive covenant begins to run because the employment relationship has been terminated. The former employee and the new employer have the choice of either not entering into a new agreement and having the old covenant enforceable or entering into a new agreement with a new restrictive covenant.  With respect to a sale of bankruptcy assets, this Court is doubtful that the appellate courts of this state will sanction the purchase and enforcement of restrictive covenants by bidders for assets of the bankrupt employer. Such a ruling would not promote any public policy and would run counter to our courts' historic protection of employees from unconscionable restrictions.  The Court finds the restrictive covenant asserted here to be invalid and unenforceable.

{39}   Based on the foregoing, it is hereby ORDERED, ADJUDGED, and DECREED that Defendants' Motion to Dismiss Plaintiff's claims for relief is GRANTED.

IT IS SO ORDERED, this the 1st day of November 2007.