MRS. ROBERT H. PEASELEY, EXECUTRIX OF THE WILL OF ROBERT H. PEASELEY, DECEASED v. VIRGINIA IRON, COAL AND COKE COMPANY, A CORPORATION

No. 6826SC276

(Filed 27 August 1969)

1. Appeal and Error § 30— record fails to show what excluded evidence would have been

Ordinarily an exception to the exclusion of evidence will not be sustained on appeal when it is not made to appear what the excluded evidence would have been.

**2. Brokers and Factors § 6; Principal and Agent § 10— liability of seller for commissions after death of sales agent**

In this action for an accounting and for recovery of sales commissions for coal shipped by defendant to a power company after death of defendant's sales agent, the trial court erred in allowing defendant's motion for nonsuit where plaintiff's evidence tended to show that by written contract the sales agent was given the exclusive right to sell defendant's coal to the power company for a specified commission, that the sales agent, through diligent efforts extending over a substantial period of time, was instrumental in developing a business relationship between defendant and the power company involving the sale of coal, that this relationship became embodied in a written contract executed by defendant and the power company during the life of the sales agent, that coal has continued to be shipped under this contract since the sales agent's death, and that defendant has refused to pay any commission thereon to the estate of the sales agent.

**3. Brokers and Factors § 6; Principal and Agent § 10— liability of seller for commissions after death of sales agent**

A sales agent whose efforts are the procuring cause of a sale made during the period the agency relationship existed is entitled to commissions thereon even though actual delivery of the article sold be made after termination of the agency, absent a clear understanding to the contrary.

**4. Brokers and Factors § 6; Principal and Agent § 10— liability of seller for commissions after death of sales agent**

Defendant coal company is obligated to pay commissions to the estate of its sales agent for coal shipped by defendant after the death of the sales agent under a contract which was the product of the agent's skill and efforts as a salesman, in the absence of any evidence that defendant was to be relieved of commissions thereon.

APPEAL by plaintiff from *Ervin, J.,* 26 February 1968 Schedule "A" Civil Session of MECKLENBURG Superior Court.

Civil action for an accounting and for recovery of sales commissions. Plaintiff in her complaint in substance alleged: Defendant is engaged in the business of producing and selling coal. Plaintiff's testator, Robert H. Peaseley (Peaseley), a resident of Mecklenburg County, N. C., was for many years prior to his death on 11 May 1965 engaged in a brokerage business, primarily relating to the purchase and sale of coal. Through diligent efforts extending over a substantial period of years, Peaseley had been instrumental in developing a business relationship in the sale and purchase of coal between the defendant and Mill Power Supply Company (Mill Power), agent for Duke Power Company (Duke). In consideration of these efforts defendant agreed, in a written contract dated 30 August 1960, that Peaseley and his "associates" should have exclusive right to offer and sell all coal produced and/or sold by defendant to Mill

Power for use by Duke, so long as the amount equaled 420,000 tons per year, and that defendant would pay a commission of 10¢ per ton on all coal thus purchased from defendant by Mill Power, agent for Duke. In each year preceding Peaseley's death shipments of coal from defendant to Mill Power and Duke exceeded 420,000 tons. On 19 June 1963 the relationship between defendant and Mill Power, agent for Duke, was embodied in a written contract which prescribed the quantity of coal to be shipped from defendant to Mill Power or Duke at not less than 960,000 tons per year. This contract remained in effect until Peaseley's death and is still in effect. Up until the time of Peaseley's death the defendant fulfilled its agreement with him and paid him 10¢ per ton on all coal shipped by defendant to Mill Power or Duke. Defendant continues to ship coal to Mill Power and Duke just as it did prior to Peaseley's death, but defendant has refused to pay any commission on coal thus shipped and delivered since Peaseley's death. Plaintiff prayed for judgment directing defendant to account for all coal shipped by it to Mill Power or Duke since Peaseley's death and for judgment against defendant calculated at 10¢ per ton of such coal, plus interest.

Defendant answered, admitting it had entered into the written contract with Peaseley dated 30 August 1960; that under this contract Peaseley sold prior to his death and defendant delivered substantial amounts of coal to Mill Power for use by Duke; that in each year prior to Peaseley's death shipments of such coal exceeded 420,000 tons; that on 19 June 1963 it had entered into a written contract with Mill Power which remained in effect until Peaseley's death; and that defendant had not paid any commission on such coal shipped and delivered after his death. Defendant attached as exhibits to its answer copies of the 30 August 1960 agreement with Peaseley and the 19 June 1963 contract with Mill Power, and in a further answer alleged that the 30 August 1960 contract was terminated by Peaseley's death, which made further performance of the contract by him impossible.

Defendant filed motion for judgment on the pleadings, which was denied.

At the trial the plaintiff introduced in evidence the written contract between defendant and Peaseley dated 30 August 1960, which was in the form of a letter and which was as follows:

"VIRGINIA IRON COAL AND COKE COMPANY
P. O. Box 1871
Roanoke 8, Virginia
Diamond 5-8124

August 30, 1960

Mr. R. H. Peaseley,
802-04 Johnston Bldg.,
Charlotte, N. C.

Dear Mr. Peaseley:

This is to confirm our conversation in my office August 16, 1960.

Beginning September 1, 1960, the Virginia Iron, Coal and Coke Company gives to you or your associates the exclusive right to offer and sell all coal produced and/or sold by Virginia Iron, Coal and Coke Company to Mill Power Supply Company for use by Duke Power Company.

In consideration for the exclusive right to sell this account, you agree to limit your commission to (10¢) ten cents per net ton. This commission will be paid directly to you by separate remittance on tons actually shipped, determined by railroad weights.

This agreement is to remain in effect as long as you are able to place for use by the Duke Power Company comparable Virginia Iron, Coal and Coke Company tonnage as shipped in 1959, or approximately 420,000 tons per year.

We look forward to a continuation of the pleasant business relationship we have enjoyed in the past.

Yours very truly,

F. X. Carroll
F. X. Carroll
Executive Vice President

FXC:JCE
ACCEPTED
*R. H. Peaseley*
R. H. Peaseley
Date: Sept. 6th 1960"

Plaintiff also introduced in evidence the written contract between defendant and Mill Power executed 19 June 1963. In this contract Mill Power, as agent for its principal, Duke, is referred to as "Buyer" and defendant is referred to as "Seller." For purposes of the questions presented by this appeal, the pertinent portions of this contract are as follows:

## "ARTICLE I

### CONSIDERATION

Section 1. In consideration of the following terms and conditions, the Seller agrees to sell and deliver and the Buyer agrees to buy and accept, subject to the provisions of this agreement, the quantity and kind of Bituminous Coal more particularly described below.

\* \* \* \* \*

## "ARTICLE III

### TERM

Section 1. This contract shall become effective July 1, 1963 and shall continue in force for a period of three years thereafter. Said contract shall continue in force and effect after expiration of said three-year term until terminated as hereinafter provided. At any time after the completion of the first year of the contract either Seller or Buyer shall have the right to terminate this contract upon giving twenty-four (24) months' written notice of termination to the other party.

\* \* \* \* \*

## "ARTICLE VI

### QUANTITY

Section 1. (a) The quantity of coal to be delivered hereunder shall be 960,000 tons during the first year of contract, ten per cent more or less, at Buyer's option.

(b) Quantity in subsequent years, may at Buyer's option, be increased 10 per cent over preceding year by giving Seller six (6) months written notice, prior to beginning of each new year under the contract. Ten per cent more or less, at Buyer's option to be effective on new quantity.

\* \* \* \* \*

## "ARTICLE VII
### DELIVERY

*Section 1.* Subject to the provisions of Section 1 of Article VI, the coal sold and purchased under this Agreement shall be shipped by Seller and accepted by Buyer in substantially equal weekly quantities.

*Section 2.* The Buyer shall designate periodically in advance to the Seller the destinations to which the coal is to be shipped.

\* \* \* \* \*

## "ARTICLE IX
### TERMS OF PAYMENT

*Section 1.* Buyer shall pay Seller by cash or check, in United States Funds, on or before thirtieth (30th) day of month following the month of shipment for the coal shipped hereunder.

*Section 2.* The weights of the coal shipped and accepted hereunder shall be determined by railroad scale weights. Weight shortages shall be adjusted between Buyer and the railroad company."

Other portions of the contract set forth specifications for quality and type of coal to be delivered and specified a base price per ton, which price was subject to be increased or decreased by changes in production costs beyond seller's control.

Plaintiff also introduced evidence tending to show: Peaseley first began to do business with defendant in 1956, at which time he was already selling substantial tonnage of coal for other producers. The first year he sold approximately 10,000 tons for defendant, and increased the amount sold for defendant each year thereafter. The year before he died he sold approximately 950,000 tons for defendant. At the same time he was increasing his sales of defendant's coal, he gradually decreased his sales of coal for other producers. In 1956 he had sold approximately 550,000 tons for other producers, and such sales for other producers were reduced each year thereafter, the amount sold by him for other producers in the year before his death being approximately 84,000 tons.

Plaintiff also introduced evidence that Mill Power is a wholly owned subsidiary of Duke and acts as Duke's purchasing agent; that defendant was not selling any coal to Mill Power or Duke until the sales that Peaseley made for defendant; that defendant sold coal to Mill Power and Duke entirely through Peaseley; that after the commission contract was signed in 1960, the volume of defendant's

coal sold by Peaseley to Mill Power for Duke gradually increased; that Peaseley constantly worked on the Mill Power-Duke account, promoting the sale of more coal, and most of his time in the last two or three years was spent on this account.

Plaintiff also introduced evidence that the tonnage of coal sold by Peaseley for defendant and the total tonnage sold by him for all producers, including the defendant, for the years 1956 through 1964 was as follows:

| Year | Tonnage of Defendant's Coal Sold | Total Tonnage Sold |
|------|------------------|-----------------|
| 1956 | 10,620  | 565,000   |
| 1957 | 103,000 | 682,000   |
| 1958 | 182,000 | 763,000   |
| 1959 | 430,000 | 878,000   |
| 1960 | 425,000 | 691,000   |
| 1961 | 520,000 | 759,587   |
| 1962 | 715,000 | 931,000   |
| 1963 | 876,000 | 1,060,585 |
| 1964 | 956,000 | 1,040,000 |

Mrs. Byrd, Peaseley's office secretary, testified she had worked for Peaseley as secretary-bookkeeper in his office in Charlotte, N. C., from 1955 until his death; that when Peaseley was out of town she would handle any complaints by Mill Power with defendant; that on the 20th or 25th of each month orders specifying the quantity of coal to be shipped each week were sent by Mill Power to Peaseley's office, and she made copies of these and sent them to defendant; that the orders came through automatically, the coal having already been sold; that prior to Peaseley's death he operated under the name "R. H. Peaseley;" that since Peaseley's death she continued to work as secretary for Mrs. Peaseley, who operated the business of manufacturer's agent as sole proprietor under the name "R. H. Peaseley Associates," mainly handling textile products; that since Peaseley's death coal has continued to move under the contract between defendant and Mill Power just the same as it did before his death; that no commission has been paid by defendant on it since Peaseley's death.

The President of Mill Power, called as a witness for plaintiff, testified that after Peaseley's death and effective 1 June 1965 there had been a price increase in the contract dated 19 June 1963 between Mill Power, as agent for Duke, and the defendant; and that beginning 1 May 1965, 634,401 tons moved under the contract from

defendant to Duke in that year, 848,074 tons in the year 1966, and 868,933 tons in 1967.

At the close of plaintiff's evidence the court allowed defendant's motion for involuntary nonsuit, and from judgment dismissing the action plaintiff appealed.

*Blakeney, Alexander & Machen, by Whiteford S. Blakeney, for plaintiff appellant.*

*Helms, Mulliss & Johnston, by Fred B. Helms and E. Osborne Ayscue, Jr., for defendant appellee.*

PARKER, J.

[1]   Plaintiff appellant's assignments of error 1 through 19 relate to the trial court's rulings sustaining defendant's objections to certain questions asked of plaintiff's witnesses. The record does not disclose what the excluded answers would have been and we are therefore unable to determine whether appellant was in anywise prejudiced by the trial court's rulings. Ordinarily an exception to the exclusion of evidence will not be sustained on appeal when it is not made to appear what the excluded evidence would have been. *Heating Co. v. Construction Co.*, 268 N.C. 23, 149 S.E. 2d 625; 1 Strong, N.C. Index 2d, Appeal and Error, § 30, p. 165; Stansbury, N.C. Evidence 2d, § 29. In our view of this case, however, the trial court's rulings on evidence are immaterial.

[2]   Appellant's assignments of error 20 and 21 are directed to the judgment of nonsuit. In entry of this judgment there was error.

Defendant has never questioned its obligation to pay Peaseley commissions on coal sold and shipped by it to Mill Power prior to Peaseley's death. This coal was sold and shipped under the written contract entered into between defendant and Mill Power on 19 June 1963 (hereinafter referred to as the "coal contract"). Defendant does contend, however, that it is not obligated to pay commissions to Peaseley's estate on coal shipped by it after the date of Peaseley's death, even though such coal was sold by defendant to Mill Power under the very same coal contract as covered the coal shipped prior to his death. Defendant's contention is based on the theory that its contract with Peaseley, which was embodied in the letter agreement dated 30 August 1960 (hereinafter referred to as the "commission contract"), called for performance of personal services by him; that his estate, not being able to perform in exactly the same manner and with the same personality as did he, the contract necessarily

terminated with his death; and that therefore his estate is not entitled to commissions on coal shipped by defendant to Mill Power after the date of his death.

Without question many contracts calling for services of a salesman are made on the basis of the particular salesman's peculiar attributes of fitness, personality, experience, contacts, industry and ability. Obviously all of such qualities and attributes are highly personal to the particular salesman involved. For this reason courts have properly held certain of such contracts not assignable by the salesman and not to survive his death. Appellee has cited a number of cases from other jurisdictions so holding, among them: *Sewing Machine Co. v. Rosensteel*, 24 Fed. 583; *Smith v. Preston*, 170 Ill. 179, 48 N.E. 688; *Kowall v. Sportswear, Inc.*, 351 Mass. 541, 222 N.E. 2d 778; and *Smith v. Zuckman*, 203 Minn. 535, 282 N.W. 269. However, these cases are not, in our view, apposite to the present appeal.

[2, 3]  Whether the commission contract between defendant and Peaseley in the present case was such a "personal service contract" as to be automatically terminated by Peaseley's death would, undoubtedly, be the issue if plaintiff's cause of action were based on the theory that she has the right to negotiate future sales contracts between defendant and Mill Power. This, however, she is not presently attempting to do. In the present action she has alleged that Peaseley, through diligent efforts extending over a substantial period of years, was instrumental in developing a business relationship between defendant and Mill Power involving the sale of coal, that this relationship became embodied in the written coal contract executed 19 June 1963, that coal has continued to be shipped under this contract since Peaseley's death, and that defendant has refused to pay any commission thereon. She has offered evidence in support of these allegations. In the present case, therefore, plaintiff's cause of action is to recover commissions on coal which was sold prior to Peaseley's death and as a result of his efforts. Certainly this coal was sold in the sense that the sales contract under which it moved was fully negotiated, reduced in detail to writing, and was signed by the contracting parties prior to Peaseley's death. The contract was for a minimum term of three years, and the parties contemplated it might last much longer. It may be assumed that both the buyer and seller contemplated that much of the coal sold under the contract was to be mined, processed, and shipped by the defendant subsequent to the date the contract was executed. That the coal covered by the contract may have been mined, processed and shipped before or after

the date the contract was executed, or before or after the date of Peaseley's death, does not, in our view, relieve defendant of the obligation to pay commissions on the coal so sold and shipped. A sales agent whose efforts are the procuring cause of a sale made during the period the agency relationship existed is entitled to commissions thereon even though actual delivery of the article sold be made after termination of the agency, at least absent a clear understanding to the contrary; See: *Richer v. Khoury Bros. Inc.*, 341 F. 2d 34; *Heuvelman v. Triplett Electrical Instrument Co.*, 23 Ill. App. 2d 231, 161 N.E. 2d 875; *Reed v. Kurdziel*, 352 Mich. 287, 89 N.W. 2d 479; *Leach Corporation v. Turner*, (Okla.) 390 P. 2d 515.

[4]    In the present case plaintiff has alleged and offered evidence tending to prove that coal was shipped by defendant after Peaseley's death under the very same coal contract which was the product of his skill and efforts as a salesman. In the absence of any evidence of an understanding that defendant was to be ‸relieved of commissions thereon, plaintiff is entitled to recover. In allowing the motion of nonsuit the trial court was in error and the judgment is

Reversed.

MALLARD, C.J., and BROCK, J., concur.