COLLIER COBB & ASSOCIATES, INC. v. JOHN D. LEAK, III AND JOHN D. LEAK

No. 8215SC320

(Filed 15 March 1983)

**Master and Servant § 11.1— covenant not to compete—unenforceable**

     In an action brought by plaintiff to restrain each defendant from divulging the names of plaintiff's policyholders and accounts and from soliciting the plaintiff's accounts in any territory worked by defendants during their employment with plaintiff, the trial court erred in issuing a preliminary injunction so restraining defendants since the sole purpose of an agreement exacted from each defendant when he was already an employee of plaintiff was to bar by the use of covenants not to compete all plaintiff's existing producing agents from competing with plaintiff; neither covenant was ancillary to a valid affirm-

ative contract; neither was supported by valid consideration since each employee was already employed; and the written contract provided no additional consideration.

APPEAL by defendants from *Martin, Judge.* Judgment entered 26 February 1982 in Superior Court, ORANGE County. Heard in the Court of Appeals 10 February 1983.

This is an interlocutory appeal of a preliminary injunction entered by the trial court on 26 February 1982 restraining each defendant from divulging the names of plaintiff's policyholders and accounts and from soliciting the plaintiff's accounts in any territory worked by the defendants during their employment with plaintiff. Defendants gave notice of appeal to this Court, and their appeal was docketed on 31 March 1982. In the interim, on 3 March 1982, defendants filed in this Court petitions to stay the preliminary injunction and for a writ of supersedeas. On 4 March 1982, this Court issued an order *ex parte,* staying the preliminary injunction entered by the trial court pending decision on the petition for writ of supersedeas. Thereafter, this Court granted the writ of supersedeas and continued the stay of the preliminary injunction pending a decision by this Court on this appeal. Plaintiff's petition for a writ of supersedeas seeking to reinstate the preliminary injunction was denied by the Supreme Court of North Carolina on 30 March 1982.

*Powe, Porter & Alphin, by E. K. Powe and Eugene F. Dauchert, Jr., for plaintiff-appellee.*

*Helms, Mulliss & Johnston, by E. Osborne Ayscue, Jr., for defendant-appellants.*

HILL, Judge.

Collier Cobb and Associates, Inc. (hereinafter referred to as Collier Cobb) is an insurance agency and surety bond brokerage firm with twelve offices including offices located in Boston, Massachusetts; Washington, D. C.; Chapel Hill, Charlotte, Raleigh, Henderson, Greensboro, North Carolina; Montgomery, Alabama; Dallas, Houston, Texas; and Louisville, Kentucky. The firm writes about one-half of the bond business in North Carolina. In April 1974, Collier Cobb purchased the stock of American Commercial Agency, Inc. (hereinafter referred to as American Commercial) in

Charlotte from NCNB Corporation, changing the name to Collier Cobb/American Commercial Agency, Inc. At the time of the acquisition, John D. Leak (hereinafter referred to as Leak) was executive vice-president in charge of the bond department at American Commercial, having served in this capacity for several years. He had no employment contract with American Commercial at the time of Collier Cobb's acquisition of the company, nor was he asked to enter into one at that time.

John D. Leak III (hereinafter referred to as Leak III) is Leak's son. In June 1974, he was employed under an oral agreement to work in the bond department of Collier Cobb in Charlotte, North Carolina, but subsequently was transferred to Chapel Hill, North Carolina. At the time of his employment with Collier Cobb, he was not asked to sign a written contract of employment or a covenant not to compete.

In the fall of 1974, an employee of Collier Cobb left the company, taking some of the business with him. Thereafter, Collier Cobb required its employees to sign employment agreements containing covenants not to compete, apparently advising them to "sign the agreement or leave." The employment agreements tendered to Leak and Leak III were similar. Each provided that the "contract may be terminated at any time by the Employer or the Agent by mailing or delivering to the other thirty days' written notice of termination" and that any modification of the contract had to be in writing. Each provided that in the event of termination of employment the employee would not compete with Collier Cobb in the insurance or bond business for a period of two years. Each referred to 30 April 1974 as the effective date, although Leak III did not work for the company on that date. No change in duties or compensation of either employee was made at the time. Both Leak and Leak III signed the agreements. At the time of signing, Leak had been employed by the company or its predecessors for 22 years and had been in the bond business nearly all of his adult life. At the time of signing the contract, he was familiar with many of Collier Cobb's clients and methods of doing business as was Leak III. Both men had worked only in the bond department.

Leak continued working until his retirement on 4 January 1982. On 15 January 1982, Leak III submitted a letter of resigna-

tion to the company and informed the chief operating officer that he would stay as long as the officer wanted him to stay. He subsequently was told to leave on 19 January 1982 and was paid through that day.

Both defendants, upon leaving the company, became employees of Leak-Mann and Associates, Inc., working in insurance as bond agents and brokers. Leak is a principal in Leak-Mann and Associates, Inc. Both defendants, in violation of the non-competition clause of the employment agreements, are soliciting business from individuals who formerly were clients of Collier Cobb. The trial court granted plaintiff temporary and permanent injunctions restraining defendants from soliciting business for themselves or Leak-Mann and Associates, Inc., in the territory worked by Collier Cobb for a period of two years after termination of their employment with Collier Cobb, as provided in the employment agreements.

The trial court found the employee agreements were supported by valid consideration. Defendants argue the trial court erred in so finding, and we agree.

We note first that a negative covenant restricting employment will not be enforced unless it is supported by a valid consideration. *Greene Co. v. Kelley*, 261 N.C. 166, 134 S.E. 2d 166 (1964); *Wilmar, Inc. v. Liles and Wilmar, Inc. v. Polk*, 13 N.C. App. 71, 185 S.E. 2d 278 (1971), *cert. denied*, 280 N.C. 305, 186 S.E. 2d 178 (1972). Plaintiff points to Item 5 of the agreement which states:

> Agent's employment shall terminate upon the death of the Agent. This contract may be terminated at any time by the Employer or Agent by mailing or delivering to the other thirty days' written notice of termination.

Plaintiff contends that this paragraph provides sufficient consideration for the entire agreement because it assures defendants thirty days' employment after written notice of termination, a right they did not enjoy as employees at will.

A careful reading of this paragraph leads us to a different conclusion. The first sentence provides the agent's employment shall terminate upon death — an obvious result. The second sentence provides the contract *may* be terminated by either

Employer or Agent upon mailing or delivering to the other party thirty days' written notice. In using the permissive term "may" rather than such mandatory terms as "shall," "will," or "must," the parties implicitly acknowledge the existence of other acceptable methods of termination. We conclude that this provision is essentially a notice provision.

Plaintiff argues that the provision creates new rights in the employee consisting principally of a guaranteed month's wages before termination which provide consideration for the entire agreement, including the covenant not to compete. We note that the provision did not work in practice as plaintiff contends. Leak's employment terminated upon two weeks' notice. Leak III's employment terminated by his notice of termination coupled with an offer to stay as long as plaintiff wanted him to; he was discharged four days later. Each party was paid only for the days worked. Any consideration that might be supplied by paragraph 5 would consist only in the mutual exchange of promises to give notice of termination. The consideration, however, would support only this particular provision and not the entire agreement.

We see the agreements between Collier Cobb and the defendants as divided effectively into two parts; the agreement is severable. The first three numbered paragraphs summarize the terms of employment under which each party had been working at the time he signed. The fourth paragraph adds the covenant not to compete to the original conditions of employment. No consideration exists to support this negative covenant. The last two paragraphs (paragraphs 5 and 6) provide for termination and modification of the agreement. These final paragraphs being severable, the consideration, if any, provided by the notice provision of the fifth paragraph supports only these final paragraphs.

To be enforceable, a negative covenant restricting other employment must be ancillary to a valid affirmative covenant or contract. *Kadis v. Britt*, 224 N.C. 154, 29 S.E. 2d 543 (1944). Nor will the negative covenant be enforced if it appears to be the main purpose of the contract. *Wilmar, Inc. v. Liles and Wilmar, Inc. v. Polk, supra; see Mastrom, Inc. v. Warren*, 18 N.C. App. 199, 196 S.E. 2d 528 (1973).

By the uncontroverted evidence of record, the employment agreements sought to be enforced fail these tests. An agreement

was exacted from each defendant when he was already an employee of Collier Cobb. The sole purpose of the agreement was to bar by the use of covenants not to compete all plaintiff's existing producing agents from competing with plaintiff. Neither covenant was ancillary to a valid affirmative contract; neither was supported by valid consideration since each employee was already employed, and the written contract provided no additional consideration.

Because we conclude the written employment agreements to be void for failure of consideration, the remaining issues brought forth by defendants become moot.

The order and preliminary injunction is hereby dissolved.

Judges ARNOLD and JOHNSON concur.