**In re HEARING CENTERS OF AMERICA, INC., a Delaware Corporation, and Earlab Hearing Centers of America, Inc., a Florida Corporation, Debtors.**

**Bankruptcy Nos. 88–02343–8P1, 88–02344–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 6, 1989.

See also, Bkrtcy., 107 B.R. 1009.

Donald Schutz, St. Petersburg, Fla., for Hearing Centers of America, Inc. and Ear-

lab Hearing Centers of America, Inc., Debtors.

Keith Fendrick, Tampa, Fla., for Donald L. Stevens and Douglas Faulkner.

## ORDER ON MOTIONS TO ASSIGN COVENANTS NOT TO COMPETE

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is a Motion filed by Hearing Centers of America, Inc., and Earlab Hearing Centers of America, Inc. (Debtors), which seeks the authority to assign Donald L. Stevens' and Douglas A. Faulkner's Covenant Not to Compete which are part of a contract that the Debtors seek to assign to Integrated Hearing Services, Inc. (IHSI). The Motion is opposed by Donald L. Stevens (Stevens) and Douglas A. Faulkner (Faulkner), who filed written objections to the Motion. The following facts are relevant to the matter under consideration.

On February 27, 1985, Stevens entered into an employment contract with Patient Care Systems. One of the Debtors, Earlab Hearing Center of America, Inc. (Earlab), is the successor in interest to Patient Care Systems. Pursuant to the terms of the contract, Stevens was employed with Earlab from February 27, 1985, through October 14, 1988, as a hearing aid specialist and regional manager. The contract, attached to Stevens' written objection as Exhibit "A", contained a Covenant Not to Compete in Paragraph 5 which provided as follows:

> The employee ... covenants and agrees that during the life of this contract and for twenty-four (24) months from the date he ceases to be associated with the company, regardless of the cause thereof
>
> (a) He will not directly or indirectly ... enter in the hearing aid business, or allied business anywhere in Florida....

Stevens resigned his position on October 28, 1988.

Faulkner was employed on or about March 17, 1987, with Hearing Centers of America, Inc. (HCA) as evidenced by his employment contract. Pursuant to the

terms of this contract, Faulkner was employed with HCA from March 17, 1987, through November 12, 1987, when his employment as national director of Health Maintenance Organizations for HCA was terminated. On or about November 24, 1987, Faulkner was rehired but it appears that the parties never signed a new employment contract. The original contract between Faulkner and HCA is attached to Faulkner's objection as Exhibit "A" and provides as follows in Paragraph 10:

> Upon termination of employment, Faulkner will not conduct to attempt to employ or enter into a business relationship with any and all HCA employees for two years following the termination of this agreement.

On or about October, 1988, Faulkner resigned from HCA.

On April 27, 1988, Earlab and HCA filed their respective petitions for voluntary relief under Chapter 11 of the Bankruptcy Code. The two cases were ultimately consolidated.

On February 27, 1989, the Debtors and IHSI executed an agreement pursuant to which the Debtors agreed, inter alia, to sell the IHSI a substantial portion of the Debtors' assets, including the contract. On March 16, 1989, the Debtors and IHSI amended the agreement by executing a First Amendment to Purchase Agreement. In conjunction with this Agreement, the Debtor's desire to assign to IHSI all of the Debtors' respective, rights, titles and interest in and to the contract under the terms and subject to the conditions set forth in a certain assignment agreement.

On May 5, 1989, the Debtors filed a Motion to Assign the entire contract to IHSI, including Stevens and Faulkner's Covenants Not to Compete which were contained within the contract. Stevens contends that at the time of his resignation he was owed $3,000 for wages earned pursuant to the terms of the contract, which have yet to be paid. Faulkner contends that upon termination, HCA became obligated to pay Faulkner three months severance pay and that, therefore, the Debtors are at fault under the terms of the original contract because there is still due and owing to Faulkner approximately $12,500. Stevens and Faulkner further contend that pursuant to 11 U.S.C. § 365(b)(1) the Debtors may not assign the contract unless they assume the contract and at the time of assumption, cure or provide adequate assurances that they will promptly cure any defaults. Further, they argue that the contract is an agreement for personal services and is, therefore, not assignable without their consent under applicable Florida law.

 The threshold question before this Court is what the nature of the contract is that the Debtor wishes to assign. It is undisputed that both Stevens and Faulkner terminated their respective employments with the Debtors in October of 1988 and that the contract no longer calls for the performance of any future services or payments for future services by the Debtor. By virtue of the fact that the contract has been terminated, it follows that the contract is fully executed. Therefore, there is no requirement of assumption under the Code. However, the Covenants Not to Compete cannot be carved out part and parcel from the rest of the contract. If the Debtor wishes to assign the Covenants Not to Compete, he must assign the entire contract which includes all of the rights and interests of the parties, as well as any claims that Stevens and Faulkner may have against the Debtors arising from the contract.

 As to the argument that the contract is an agreement for personal services and is therefore not assignable without their consent under Florida law, this Court is satisfied that the contract at issue is not a personal service contract in the traditional sense. For example, it may be against public policy to assign a non-compete covenant contained within a personal services contract, such as where one person contracts to have his home built by a well-known and respected builder called "A", who attempts to assign the job to an inexperienced and unknown builder called "B". Clearly, such personal services contracts are not assignable absent consent under

Florida law. *See Schweiger v. Hoch*, 223 So.2d 557 (Fla. 4th DCA 1969).

In actuality, the contract that the Debtors seek to assign contains a covenant which attempts to keep the employees from performing, rather than an attempt to assign the performance of a personal service.

 From the current record, it is impossible to tell whether the Debtor is liable, in fact, to Stevens and/or Faulkner for a breach of their employment contracts, or on the other hand, whether Stevens and Faulkner actually breached the employment contract. If the Debtors breached the contract, the covenants not to compete would be invalid and the Debtors would have nothing to assign. Therefore, the Motions to Assign the Covenants Not To Compete should be denied without prejudice pending the resolution of the claims by Stevens and Faulkner against the Debtors.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motions to Assign Covenants Not to Compete as to Donald L. Stevens and Douglas A. Faulkner be, and the same are hereby, denied without prejudice pending a resolution of the disputed claim by Stevens and Faulkner against the Debtors.

DONE AND ORDERED.