The **REYNOLDS AND REYNOLDS COMPANY, Plaintiff,**

v.

**Harry T. TART, and Robert F. Wheeler, Defendants.**

Civil No. 5:96CV77–T.

United States District Court, W.D. North Carolina, Statesville Division.

Feb. 12, 1997.

John C. Nicholls, P. Marshall Yoder, Poyner & Spruill, Charlotte, NC, for plaintiff.

W. Joseph Dozier, Jr., Dozier, Miller, Pollard & Murphy, Charlotte, NC, for defendants.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Defendants' timely filed objections to a November 27, 1996, Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr., denying the Defendants' Motion for Summary Judgment.[1] Having reviewed the Memorandum and Recommendation, as well as the motions and pleadings of the parties, this Court will adopt the recommendations made by the Magistrate Judge in full.

## I. STANDARD OF REVIEW

■ The Court reviews *de novo* those portions of the Memorandum and Recommendation to which objections have been filed, 28 U.S.C. § 636(b)(1)(C); *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424, *reh'g denied,* 448 U.S. 916, 101 S.Ct. 36, 65 L.Ed.2d 1179 (1980), and gives careful review to un-objected portions for clear error. 28 U.S.C. § 636(b)(1)(A); *see Peck v. Tegtmeyer,* 834 F.Supp. 903 (W.D.Va.1992), *aff'd,* 4 F.3d 985 (4th Cir.1983), *cert. denied,* 510 U.S. 1074, 114 S.Ct. 884, 127 L.Ed.2d 79 (1994). The Defendants filed objections to the Memorandum and Recommendation on December 6, 1996, and proposed amended objections December 10.[2] The Plaintiff filed a motion in response to Defendants' amended objections on December 23, 1996.

The Defendants have specifically objected to the Memorandum and Recommendation's central tenants: (1) that summary judgment should be denied on the issue of whether the non-competition covenants here at issue were supported by adequate consideration; and (2) that summary judgment should not be entered on the covenant's non-assignability.[3] For the reasons set forth in the Memorandum and Recommendation and discussed

herein, the Defendants' objections are hereby overruled and the Memorandum and Recommendation adopted as consistent with the law.

Summary judgment is appropriate if there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue exists if a reasonable jury considering the evidence could return a verdict in favor of the non-moving party, here the Plaintiff. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

Defendants, as the moving party, have the initial burden to show a lack of evidence to support Plaintiff's case. *Shaw, supra,* (citing *Celotex Corp., v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)). This showing does not require the Defendants to prove the absence of a genuine issue of material fact but only note its absence. *Holland v. High–Tech Collieries, Inc.,* 911 F.Supp. 1021, 1025 (N.D.W.Va.1996) (citing *Celotex, supra*). If this showing is made, the burden then shifts to the Plaintiff, who must convince the Court that a triable issue does exist. *Shaw, supra.* Such an issue will be shown "if the evidence is such that a reasonable jury could return a verdict for the [plaintiff]." *Id.* A "mere scintilla" of evidence will not suffice to defeat summary judgment. *Id.*

In considering the facts of the case for the purposes of a summary judgment motion, the Court views the pleadings and materials presented in a light most favorable to the Plaintiff as the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *on remand, In re Japanese Electronic Products Antitrust Litiga-*

---

1. As matters outside the pleadings have been presented to the Court by both parties and all parties have had ample opportunity to present material pertinent to a summary judgment motion, the Court has treated the Defendants' alternatively plead motion as one for summary judgment. See Fed.R.Civ.P. 12(c), 56.

2. The December 10 filing contained a motion to amend the December 6 objections. Because the

Plaintiff did not object but instead readily responded to the amended objections, that motion is granted *nunc pro tunc.*

3. The Magistrate Judge also rejected the Defendants' equitable defense of unclean hands as premature. This Court accords in that conclusion.

*tion,* 807 F.2d 44 (3d Cir.1986), *cert. denied, Zenith Radio Corp., v. Matsushita Electric Industrial Co.,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987).

## II. INTRODUCTION AND BACKGROUND

In this action, Plaintiff Reynolds and Reynolds Company ("Reynolds") seeks an injunction ordering the Defendants Robert F. Wheeler and Harry T. Tart to abide by the terms of certain non-compete covenants as well as damages arising from the Defendants' failure to so abide thus far. Defendants contend that the restrictive covenants are unenforceable because (1) they were not initially supported by adequate consideration; and (2) the Plaintiff, as an assignee of the covenants, lacks standing to enforce them.

Reynolds manufactures, buys, sells, trades and deals in business forms such as stationery, account registers, records, printed materials and other similar products. Exhibit E, Affidavit of Johnny Buff, *attached to* Plaintiff's Response to Defendants' Motion for Leave to Amend and Defendants' Objections to Memorandum and Recommendation ("Plaintiff's Response"), filed December 23, 1996 ("Buff Affidavit"). On January 23, 1996, Reynolds purchased a substantial portion of the assets and good will of Jordan Graphics, Inc. ("Jordan"). Exhibit A, Affidavit of Adam M. Lutynski, *attached to* Plaintiff's Response ("Lutynski Affidavit"). In connection with the acquisition, Reynolds was assigned a number of contracts and agreements Jordan had with third parties, including its employment agreements with Defendants Wheeler and Tart. Buff Affidavit.

Tart began his employment with Jordan in April of 1978. Wheeler began his employment in September 1985. The actual date on which each employment began is in dispute; however, at least one fact surrounding each employment is not: prior to the day that each man signed his covenant, he interviewed with Richard Deese. Richard Deese was Jordan's Vice–President of Sales from 1967 until January 31, 1990; his job included hiring sales people and he was authorized to offer positions of employment to potential sales people. Affidavit of Richard Deese *attached to* Defendants' Motion to Dismiss or for Summary Judgment ("Defendants' Motion to Dismiss"), filed July 31, 1996, at 1 ("Deese Affidavit") Tart met with Deese on April 21, 1978. Affidavit of Harry T. Tart *attached to* Defendants' Motion to Dismiss at 2 ("Tart Affidavit"). Deese told Tart that Jordan had a sales position open in Hickory, North Carolina, and familiarized him with the terms of the employment, including a base salary, travel expenses and a future commission arrangement. Deese Affidavit; Tart Affidavit. Deese and Tart swear that Deese offered Tart the sales position at that meeting and Tart accepted. *Id.* Mr. Johnny Buff, currently Regional Sales Manager for Reynolds in the area worked by Tart, states that Tart "applied for a sales representative's position with Jordan on April 24, 1978 and was hired on that date." Buff Affidavit at 2.

Deese met with Wheeler in August of 1985. Bob Murr, Jordan's regional sales manager for the Greensboro region was also present. Deese Affidavit at 2. Deese told Tart that Jordan had a sales position open in Hickory, North Carolina, and familiarized him with the terms of the employment, including a base salary, travel expenses and a future commission arrangement. Deese Affidavit at 2–3. Deese and Wheeler swear that Deese offered Wheeler the sales position at that meeting and Wheeler accepted. *Id.,* at 3; Wheeler Affidavit at 2. Johnny Buff, currently Regional Sales Manager for Reynolds in the area worked by Wheeler, states that Wheeler "applied for a sales representative's position with Jordan on September 16, 1985 and was hired on that date." Buff Affidavit at 3.

Wheeler and Tart state that at no time prior to the day each signed his covenant not to compete were such covenants mentioned or discussed. Wheeler Affidavit at 2–3; Tart Affidavit at 2–3. Deese, for his part, states that he does not "believe" he mentioned or discussed the Jordan non-competition agreement to or with Tart. Deese Affidavit at 2. Deese flatly states that he did not mention the non-competition agreement to Wheeler. *Id.,* at 3. According to his affidavit, Deese states that he told very few potential sales

people that their employment with Jordan was conditioned upon signing an employment and non-competition agreement, and that Jordan simply included such an agreement in the administrative paperwork to be signed by the new employee on his or her first day of work. *Id.*

On April 24, 1978, three days after Tart interviewed with Deese, Tart met with Deese in Jordan's Charlotte office and was given a stack of paperwork to complete. Tart Affidavit at 2. Wheeler's route to the paperwork was slightly more circuitous. After his late August interview, Wheeler drove back to Texas, resigned from his position at K–Mart and sometime thereafter packed his belongings and moved to Kernersville, North Carolina, arriving on September 10. Wheeler Affidavit at 2. On September 10 or 11, Wheeler reported to the Jordan office in Hickory, North Carolina, and, with the salesman who had recently resigned from Wheeler's new territory, traveled to Morganton to meet several of Jordan's customers. *Id.* It was not until September 16, 1985, when Wheeler arrived at Jordan's Charlotte office, that Cynthia Ross, a Jordan personnel officer, presented him with papers to sign. *Id.,* at 3.

Each man signed essentially identical covenants not to compete, Wheeler on September 16, 1985, and Tart on April 24, 1978. The terms of the agreement as relevant to this action are set out below:

> WHEREAS, Salesman is desirous of working for the Company as a Salesman in [territory, including radius], and the Company is willing to employ [name] as a Salesman in the territory. [sic]
>
> NOW, THEREFORE, in consideration of the premises and the sum of one ($1.00) Dollar to each of the parties hereto paid to the other, the receipt of which is hereby acknowledged, and in further consideration of the provisions and agreements hereafter set forth, it is agreed by and between the parties hereto as follows:
>
> 1. The Company agrees to work Salesman in the Territory, and [name] agrees to become so employed, as of the date of the signing of this Agreement;
>
> 2. [Name] agrees that during the period of one (1) years next following the date of the termination for any reason of his employment with the Company, he will not directly or indirectly. . . .

Exhibits 1, 2, *attached to* Buff Affidavit.

The agreement prohibits a variety of competitive activities in the Territory and empowers the Company to enjoin the employee from engaging in them.

Defendants each received a letter dated January 8, 1996, offering them employment with Reynolds effective if and when Reynolds completed acquisition of Jordan, estimated to occur on January 22, 1996. Exhibit A, *attached to* Tart and Wheeler Affidavits. That offer included different benefits and a different pay scheme, as well as a more restrictive competitive covenant. *Id.* Substantively identical letters dated January 31, 1996, informed the Defendants that they had yet to become Reynolds employees due to their failure to complete paperwork, including a new non-compete agreement, and that their failure to complete the paperwork by February 5 would result in the company assuming that its employment offer had been refused. Exhibits D *attached to* Tart and Wheeler Affidavits. A letter dated February 23, 1996, informed Defendant Tart that his election not to complete the required paperwork had resulted in his "never" having been employed by Reynolds. Exhibit F, *attached to* Tart Affidavit.

## III. DISCUSSION

Over the years, the disfavor with which common law courts once looked upon non-competition clauses as unreasonable restraints on trade and against public policy, see *Mar–Hof Co. v. Rosenbacher,* 176 N.C. 330, 97 S.E. 169 (1918), has given way to a willing acceptance of covenants not to compete where agreements are voluntary and reasonable. "While the law frowns upon unreasonable restrictions, it favors the enforcement of contracts intended to protect legitimate interests," for it is "as much a matter of public concern to see that valid [covenants] are observed as it is to frustrate oppressive ones." *Sonotone Corp. v. Baldwin,* 227 N.C. 387, 390, 42 S.E.2d 352, 355 (1947). "[P]ro-

tection of customer relationships and good will against misappropriation by departing employees is well recognized as a legitimate protectable interest of the employer." *United Laboratories, Inc., v. Kuykendall,* 322 N.C. 643, 651, 370 S.E.2d 375, 381 (1988).[4] At base, by "enforcing the restrictions [a] court is only requiring the defendants to do what they agreed to do." *Asheville Assoc., Inc. v. Miller,* 255 N.C. 400, 404, 121 S.E.2d 593, 595 (1961).

 Today, a restrictive covenant between an employer and employee will be held valid and enforceable in North Carolina if it is (1) in writing; (2) made part of a contract of employment; (3) based on valuable consideration; (4) reasonable both as to time and territory; and (5) not against public policy. *United Laboratories, Inc.,* 322 N.C. at 649–50, 370 S.E.2d at 380. The Defendants in this action first challenge the adequacy of consideration said to support the restrictive covenants each man signed. Second, they contend that insofar as those covenants were supported by adequate consideration, they were unassignable to the Plaintiff. The Court considers the two arguments in turn.

## A. Want of Consideration

 Defendants urge summary judgment first because the covenants they signed were not supported by consideration.[5] To assess whether a negative covenant was agreed to in exchange for adequate consideration, North Carolina courts first look to see if the covenant was entered into as part of the employee's initial employment or if it was entered into after an employment relation-

ship already existed. Where the covenant is entered into in connection with an employee's being hired for a job, it is generally held that "mutual promises of employer and employee furnish valuable considerations each to the other for the contract," and thus for a covenant contained therein. *James C. Greene Co. v. Kelley,* 261 NC. 166, 168, 134 S.E.2d 166, 167 (1964). Consequently a "promise of new employment is valuable consideration and will support an otherwise valid covenant not to compete contained in the initial employment contract." *Young v. Mastrom, Inc.,* 99 N.C.App. 120, 123, 392 S.E.2d 446, 448, *disc. rev. denied,* 327 N.C. 488, 397 S.E.2d 239 (1990). By contrast, a covenant entered into *after* an employment relationship already exists must be supported by new consideration, such as a raise in pay or a new job assignment. *Worth Chemical Corp. v. Freeman,* 261 NC. 780, 136 S.E.2d 118 (1964).

 If the covenants here were found to have been agreed to after the Defendants began their employment, they would fail for lack of consideration. In North Carolina, where an employment relationship already exists, a restrictive covenant's recitation of continued employment as "new" employment (i.e., in the same territory and on the same terms) cannot not provide consideration for the employee's promise. See, *e.g., Worth Chemical Corp., supra.*[6] Thus, assuming that the Defendants were employed before they signed their agreements, continued employment under unchanged terms cannot have provided consideration for their written promises not to compete. Such employment

---

**4.** "When an employee, during the course of his or her employment, develops or improves customer relationships, the employee is establishing business good will, which is a valuable asset of the employer...." *United Laboratories, Inc.,* 322 N.C. at 652, 370 S.E.2d at 382.

**5.** The Defendants do not contest that the covenants are "ancillary" to a valid affirmative covenant or contract, as they must be to be enforceable. See *Kadis v. Britt,* 224 N.C. 154, 159, 29 S.E.2d 543, 546 (1944). If the negative covenant itself "appears to be the main purpose of the contract," the covenant will not be enforced. *Collier Cobb & Assoc., Inc. v. Leak,* 61 N.C.App. 249, 253, 300 S.E.2d 583, 585, *review denied,* 308 N.C. 543, 304 S.E.2d 236 (1983).

**6.** The only consideration that Plaintiff avers support the agreements are the "contemporaneous" offers of employment made to the Defendants. Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, filed October 11, 1996 at 18. The only other consideration evident in the agreements is the recitation that the parties exchanged one dollar each. In addition to being "grossly inadequate," *Everett v. Gainer,* 269 N.C. 528, 532, 153 S.E.2d 90, 93 (1967), the employer's dollar consideration appears to have supported the receipt of the employee's dollar rather than the employee's agreeing to give up his livelihood within a 60–mile radius for one year. Cf. *Collier Cobb & Assoc., Inc.,* 61 N.C.App. at 253, 300 S.E.2d at 585.

is the very consideration argued by Plaintiff to support each employee's covenant.[7] Accordingly, insofar as Plaintiff attempts to argue that the covenants in this matter were entered into subsequent to employment, they must fail, as a matter of law, for want of consideration.

North Carolina courts provide a second avenue for assessing the adequacy of consideration: where covenants are not entered into after the employment relationship begins but rather at its inception. In the present case, two theories might be argued to support the characterization of these covenants as having been entered into at the time of employment. First, each covenant could represent a written coda to an earlier oral contract agreed to *at the time* that oral contract was formed. Second, each covenant could have been part of an employment contract formed *the day* each covenant was signed. As to the first theory, the Defendants have presented uncontroverted evidence showing that restrictive covenants were not discussed or agreed during meetings in which they allege oral employment contracts were formed. Summary judgment would thus have been granted if the Plaintiff contended otherwise. Summary judgment on the second theory, however, must be denied—the Plaintiff has produced evidence that raises the possibility that the Defendants applied for and were given their jobs on the same day they signed their covenants.

Returning to the first theory, it appears that the Plaintiff has failed to refute facts laid out by the Defendants showing that neither employee, in his oral discussions conducted prior to the day on which each signed his written covenant not to compete, agreed to the subsequent covenant. Instead of offering evidence to the contrary, the Plaintiff has simply claimed that the Defendants entered into their employment contracts on the day each signed his covenant, and that any oral discussions to the contrary constitute incompetent parol evidence.

 Under the parol evidence rule, evidence varying, adding to or contradicting a written instrument intended to be a final integration of a transaction is inadmissible. *Hall v. Hotel L'Europe, Inc.,* 69 N.C.App. 664, 666, 318 S.E.2d 99, 101 (1984). However, where a writing is only a partial integration of the agreement, "it is presumed the writing was intended by the parties to represent all their engagements as to the elements dealt with in the writing." *Neal v. Marrone,* 239 N.C. 73, 77, 79 S.E.2d 239, 242 (1953). Thus, even though the writings in this case contain no merger clauses nor specifics of employment like term or pay and therefore do not represent complete employment contracts, the terms contained in them would be final as against contrary parol evidence. See generally *Grombach v. Oerlikon Tool & Arms Corp. of America,* 276 F.2d 155 (4th Cir.1960) (applying North Carolina parol evidence rule to strike alleged oral agreement directly contrary to written terms of employment contract).

 Yet North Carolina courts have worked a modification of the parol evidence rule in the context of employee covenants. Specifically, the courts have held that where an offer of employment has been made and accepted prior to the signing of a written employment contract, restrictive covenants contained in the subsequent written contract will not be binding unless agreed to at the time of the original offer and acceptance or unless founded on new consideration. See *Young, supra; Stevenson v. Parsons,* 96 N.C.App. 93, 384 S.E.2d 291 (1989), *disc. review denied,* 326 N.C. 366, 389 S.E.2d 819 (1990). That is, a covenant contained in a written employment contract executed after employment was actually offered and accepted will, if contested, not be valid *unless* parol evidence from the original transaction establishes that the covenant was agreed to at the time.

The Court of Appeals considered this type of situation in *Young v. Mastrom.* In *Young,* the contracts of Beith, Young, and Carpenter, former employees of the defendant Mastrom, contained written covenants not to

---

**7.** This situation should not be confused with one where the written agreement, though nominally entered into after the employment relationship exists, was legally set in motion at the time that relationship first formed. See discussion, *infra.*

compete. The trial court, however, determined after a hearing that each employee accepted an offer of employment some short time before reporting to work to sign an employment contract.[8] Examining that finding, the appeals court concluded that the issue of whether an employment relationship existed *before* the employees discussed or signed their covenants with the employer (such that the promise of new employment would not serve as consideration for the restrictive covenants) hinged on the "credibility of the witnesses." 99 N.C.App. at 123, 392 S.E.2d at 448. "The trial court, acting as fact finder, determined that during the pre-hiring interviews, none of the three employees were shown a copy of an employment contract, the restrictive covenant, or the personnel policy." *Id.* These findings, concluded the appellate court, were well supported by the evidence. Turning to the trial court's legal conclusions, the Court of Appeals found them well-supported as well:

> [T]he terms of an oral covenant later executed in writing must be agreed on at the time of employment for the promise of employment to serve as consideration, thus making an otherwise valid covenant enforceable. In the instant cases there was no agreement as to the terms of the covenants at the time of employment. Therefore, the promise of employment cannot serve as consideration.

*Id.*

██ In the present case, the Court would have to find two facts to follow the rule applied in *Young:* first, that the Defendants entered into employment before they showed up for work and signed the covenants; and second, that the subsequent covenants were not agreed to when the employment relationship arose. Defendants have presented evidence (their own affidavits and that of Mr. Deese, who was authorized at the time to make offers of employment) on the first issue, indicating that offers of employment were made and accepted prior to the time each man showed up for work and signed his restrictive covenant. See Deese Affidavit at 2–3; Wheeler Affidavit at 2–3; Tart Affidavit at 2–3. (The parties' failure to execute an initial written agreement did not preclude the creation of an enforceable agreement. See *Walker v. Goodson Farms, Inc.*, 90 N.C.App. 478, 369 S.E.2d 122, *disc. review denied*, 323 N.C. 370, 373 S.E.2d 556 (1988).) On the second issue, Defendants have presented uncontroverted statements that restrictive covenants were not discussed at the meetings in which Deese explained the particulars of the position he wished each man to fill and offered them the job. Both Wheeler and Tart aver Deese offered them the position without mention of restrictive covenants, and both men state they accepted those offers. See Wheeler Affidavit at 2–3; Tart Affidavit at 2–3. For his part, Deese corroborates those accounts in his affidavit by stating that he did not discuss the company's non-competition covenants with Wheeler and that he "believes" he did not discuss them with Tart. Deese Affidavit at 2–3.

Anticipating these statements, the Plaintiff responds with evidence it claims calls the first factual issue—whether the Defendants entered employment before such time as they were presented with the written covenants—into question. Specifically, Plaintiff contends the written contracts containing the covenants and the affidavit of Mr. Buff show that employment began *on* the day each employee signed his agreement. Thus, concludes Plaintiff, when employment began is a question that turns on credibility, a matter for the jury to resolve.

Reference to the written agreements reveals that they do recite, in their premises, that the undersigned salesman "is desirous of working for the Company," that the Company is "willing to employ" them and that the salesman agrees "to become so employed, as of the date of the signing of this Agreement." See Exhibits 1 and 2 *attached to* Buff Affidavit. Likewise, Mr. Buff baldly asserts that

---

8. Young interviewed for employment in the summer of 1971 and accepted an offer of employment and began work on August 16, 1971. He signed an employment contract containing the restrictive covenant on August 23, 1971. Beith accepted employment effective June 17, 1974, but signed an employment contract on June 21 containing a covenant not to compete. Carpenter accepted employment with Mastrom after a February 1976 interview and signed his covenant not to compete on March 1, 1976, the day he reported for his first day of work.

Wheeler and Tart "applied" for work the same day each man signed, as a condition of employment, his written covenant. Buff Affidavit at 2–3. As explained earlier, the fact that the written contracts state that they were entered into pursuant to (and as a condition of) employment would not save the covenants if, in truth, an employment relationship already existed before the documents were signed.

Nevertheless, the contract terms and the statements of Mr. Buff, viewed in a light most helpful to the Plaintiff, might convince a rational trier of fact to question whether the Defendants were in fact employed *prior to* signing the agreements and answer that question in the negative. The question is a close one, especially in light of the Plaintiff's burden; but it is one that must be resolved against summary judgment.

■ Accordingly, the Court will deny summary judgment on the issue of whether an employment relationship existed before each Defendant signed his covenant not to compete. If the relationships existed before the documents were signed, then the covenants lacked consideration and are void; if the covenants were signed at the inception of the employment relationship, then they will be upheld. Whether the covenants were simultaneous to or subsequent to employment is a question for the jury. The Court notes, however, it will consider a motion for judgment if it becomes apparent that the Plaintiff has failed to produce evidence from which a rational jury could find that an employment relationship did not exist prior to the day on which each covenant was signed.

## B. Assignability

■ The Defendants next contend that their covenants were not assignable to, and consequently are not enforceable by, the Plaintiff. The evidence before the Court, seen in a light most favorable for the Plaintiff, indicates that Reynolds was assigned the Defendants' at-will employment contracts and then summarily exercised its option to terminate them. Certainly, if Jordan, rather than Reynolds, had exercised this right—e.g., for failing to accept lower pay—no one could contest that the restrictive covenants (assum-

ing their validity) would act to prevent the men from competing against Jordan in a restricted area for one year. According to the Defendants, the Plaintiff does not have that right; the Court is not so persuaded.

■ As a general matter, "a covenant not to compete with a business is assignable." *Keith v. Day*, 81 N.C.App. 185, 195, 343 S.E.2d 562, 568 (1986). The covenant in *Keith* was entered into pursuant to the parties beginning a franchise hardware store. The Court observed that the covenant not to compete involved a matter that fell somewhere between the sale of business and a contract of employment, but it did so only to determine under what standard to judge the covenant's reasonability, not its assignability. See *id.*, at 193–94, 343 S.E.2d at 567–68. Indeed, after concluding that the covenant was reasonable, the Court of Appeals then rejected outright the defendant's claim that an interest in a covenant not to compete could not be assigned. *Id.*, at 195, 343 S.E.2d at 568.

■ Defendants would have the Court reach an opposite conclusion in this case because the covenants in question were part of a contract for personal services. Under North Carolina law, the "right to performance of a personal service contract requiring special skills based upon the personal relationship between the parties cannot be assigned without the consent of the party rendering those services." *Peaseley v. Virginia Iron, Coal & Coke Co.*, 5 N.C.App. 713, 169 S.E.2d 243, 247 (1969). Nonetheless, "some of such contracts may be assigned when the character of the performance and the obligation will not be changed." *Munchak Corp. v. Cunningham*, 457 F.2d 721, 725 (4th Cir.1972).

Even if the Court were to assume that the Defendant-employees in this case possessed the "special, exceptional, and unique knowledge, skills and ability" of a marquee professional basketball player, *Munchak*, 457 F.2d at 722, such as a Billy Cunningham or Jerry Stackhouse, it would still conclude that "the character of the performance and the obligation," *id.*, at 725, did not change when Reynolds took over their contracts—the De-

fendants, before and after the assignment, were to be at-will salesman of the same products to the same customers in the same area. The fact that Reynolds proposed to reduce compensation, change benefits and increase obligations would not change the fundamental character or the employee's situation, for these are all modifications that Jordan itself could have made and *in several respects did make* under the at-will contract.

The Court need not decide on those grounds, however, for there exists a more limited and less controversial justification for its decision: regardless of whether the employment contracts were in fact assigned or assignable, the restrictive covenants plainly were. Limitations on an employer's liberty to assign the right to enforce personal service contracts, like restrictions on an employee's liberty to delegate her duty to perform under an employment contract, involve different issues than assignment of covenants not to compete. For while the former two primarily involves the relationship between the employer and employee, the later concerns an employer's investment in its employee and the possibility of that investment being pawned off to a rival competitor. Covenants not to compete facilitate and protect capital investment. It comes as no small surprise, then, that in conjunction with a sale of business, "a covenant not to compete with a business is assignable." *Keith,* 81 N.C.App. at 195, 343 S.E.2d at 568. See *Hexacomb Corp. v. GTW Enterprises, Inc.,* 875 F.Supp. 457, 464 (N.D.Ill.1993) ("A successor corporation in an asset purchase can enforce confidentiality agreements and cove-

nants not to compete that an employee signed with its predecessor corporation."), *dismissed on other grounds,* 1994 WL 174114 (N.D.Ill.1994); *A. Fink & Sons v. Goldberg,* 101 N.J.Eq. 644, 139 A. 408, 410 (N.J.Chan.1927); *Norman Ellis Corp. v. Lippus,* 13 Misc.2d 432, 176 N.Y.S.2d 5, 6 (N.Y.Sup.1955); see also *Equifax Services, Inc. v. Hitz,* 905 F.2d 1355, 1361 (10th Cir. 1990) (holding that in case of a merger, surviving corporation "automatically succeeds to the rights of the merged corporations to enforce employees' covenants not to compete"); cf. *In re Hearing Centers of America, Inc.,* 106 B.R. 719, 721–22 (Bankr. M.D.Fla.1989) (applying Florida law) (holding covenants not to compete assignable even where state law prohibits assignment of personal service contracts). But see *Reynolds and Reynolds Co. v. Hardee,* 932 F.Supp. 149 (E.D.Va.1996);[9] *Fonda Group, Inc. v. Erving Industries, Inc.,* 897 F.Supp. 230 (E.D.Pa.1995) (collecting cases allowing assignment of covenants only where agreed to by original parties or ratified); *Abalene Pest Control Service, Inc. v. Hall,* 126 Vt. 1, 220 A.2d 717 (1966) (assignments of covenants not to compete contained in personal services contracts valid where assignability recited in covenant).

■ The Defendants contend, finally, that regardless of whether covenants can be assigned as a general matter, the Plaintiff cannot enforce these covenants because, as assignee, it failed to assume the assignor's burdens under the employment contract containing the covenant.[10] Assuming *arguendo*

---

**9.** The Court declines to follow the reasoning of *Reynolds and Reynolds Co.* As Defendants point out, that case involved facts very similar to those involved here and indeed was brought by the same Plaintiff. The District Court in that case, having surveyed the national array of cases touching on the assignability of covenants not to compete, found most persuasive the reasoning set forth in cases that supported its holding that the covenant not to compete was not, as incident to sale of a business, assignable to the plaintiff. *Id.,* at 155. *Reynolds,* it should be noted, was premised on Virginia law, which provides that no personal service contracts are assignable without consent. As discussed above, North Carolina law is not so absolute.

**10.** In addition to holding that covenants not to compete are assignable even where state law prohibits assignment of personal service contracts, the Bankruptcy court in *In re Hearing Centers of America Inc.,* 106 B.R. 719, 721–22 (Bankr.M.D.Fla.1989), considered the issue whether restrictive covenants contained in fully executed employment contracts were assignable without assumption of the entire contract *which included monetary claims* by the formerly severed employees. The Court held they were not. The contracts in the case *sub judice* were not fully executed and the employees have made no monetary claims under them in this suit. Moreover, as explained above, even if all of the terms of the employment contract were assigned to the Plaintiff along with the covenants, the employer

that the Plaintiff could not be assigned valid covenants not to compete without assuming the entire executory employment contract, it does not appear that Reynolds breached its responsibilities under the contract in a way that would bar enforcement of the covenants, be it through the equitable principle of unclean hands or otherwise. Instead, the ills of which the Defendants complain appear rooted in the employment relationship they voluntarily entered and adopted over the years with Jordan. Defendants admit that their employment was under Jordan and Reynolds "at will"; upon acquiring their employment contracts, Reynolds exercised the right, formerly held by Jordan, to summarily terminate the Defendants; thereafter, Reynolds, like Jordan, was (assuming the covenants valid) entitled to enforce the non-compete term one year after termination. The statement by a corporate official to one of the Defendants that "[y]ou have never been an employee of Reynolds and Reynolds," Exhibit F *attached to* Tart Affidavit, considered in a light most favorable to the Plaintiff and in conjunction with other pleadings and evidence, hardly suggests that Reynolds did not in fact acquire the employment contracts and restrictive covenants it specifically paid for. Instead, the statement is consistent with Reynolds having terminated the Defendants the moment it purchased their contracts, as was the company's right. Inasmuch as Defendants made a mistake in agreeing to contracts that placed precious few burdens on their employer, the party deserving punishment is not the Plaintiff.

In conclusion, the covenants not to compete, assuming they were valid and enforceable from their inception, were assets assignable to the Plaintiff in conjunction with the sale of an ongoing business, Jordan Graphics. North Carolina law allows covenants not to compete to be assigned. Even if that assignability were limited to situations where personal service contracts may be assigned, the character and performance of the Defendants' employment obligation remained the same. On the issue of assignability, summary judgment is therefore denied.

did not breach those terms when it gave Defen-

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' motion to amend objections, filed December 10, 1996, is hereby **ALLOWED** *nunc pro tunc.*

**IT IS FURTHER ORDERED** that the Defendants' motion to dismiss, or in the alternative, for summary judgment, on the issues of want of consideration and assignability is hereby **DENIED.**

dants notice of their termination.